**Clinton W. LOVE, Sr., and Rose Mary Love, husband and wife, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Farmers Home Administration, Defendants.**

**No. CV–85–146–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Nov. 17, 1986.

imposed by administrative regulation, to pay the Loves' delinquent water assessments. Accordingly, the Loves prosecute their claim for relief under the Federal Tort Claims Act ("FTCA") (28 U.S.C. §§ 1346(b) and 2671–2680), which vests jurisdiction of actions under the FTCA exclusively in the federal district courts.[1]

This action was tried before the court, sitting without a jury, on July 8, 1986. Pending at the time of trial was the FmHA's motion to dismiss, or in the alternative, motion for summary judgment, which the court took under advisement. The FmHA seeks dismissal upon the ground the Loves' complaint fails to state a claim upon which relief can be granted. Specifically, the FmHA contends it owed no actionable duty to the Loves with respect to the payment of the Loves' delinquent water assessments. Consequently, the Government submits the Loves' claim for negligence must fail as a matter of law.

Having considered the merits of the arguments advanced by the parties in support of their respective positions, the court is compelled to conclude that the Loves' complaint fails to state a claim for relief under the Federal Tort Claims Act.

DISCUSSION:

I.

This controversy has its genesis in an administrative regulation, promulgated by the Secretary of Agriculture under authority of Section 339 of The Consolidated Farmers Home Administration Act of 1961 (7 U.S.C. § 1989), in conjunction with Section 510(g) of The Housing Act of 1949 (42 U.S.C. § 1480(g)). The regulation at issue, Title 7, Code of Federal Regulations, § 1863.4, relates to the "servicing" of delinquent taxes due on real estate upon which the FmHA has a security interest arising from an FmHA loan.[2]

> The County Supervisor will contact each borrower with a delinquent tax and make every practicable effort to have him pay the tax with his own funds. If the delinquent tax is not paid and the borrower comes to the office with proceeds for application on the

Theodore K. Thompson, Thompson & Swenson, Havre, Mont., for plaintiffs.

Byron H. Dunbar, U.S. Atty., George F. Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

## FACTUAL BACKGROUND

At the times pertinent to this action, Clinton and Rose Mary Love operated a farm near Harlem, Montana. The Loves obtained water for irrigation purposes from the Harlem Irrigation District. As of May 25, 1983, the Loves were two years' delinquent in the payment of their annual water assessments. As of that date, the Harlem Irrigation District terminated delivery of water to the Loves' farming property. Consequently, the Loves were without water for irrigation throughout the 1983 growing season.

The Loves bring this action against the United States of America, acting through the Farmers Home Administration ("FmHA"), to recover monetary compensation from that entity for damages the Loves allegedly sustained as a result of the termination, by the Harlem Irrigation District, of water flow to the Loves' property. The Loves predicate their claim upon their assertion that the FmHA had an obligation,

1. The Loves complied with the jurisdictional requirements of 28 U.S.C. § 2675(a), having filed an administrative claim with the FmHA six months prior to commencing this action.

2. 7 C.F.R. § 1863.4 provides, in pertinent part: *Servicing delinquent taxes.*

The Loves' claim against the FmHA is premised on their conclusion that 7 C.F.R. § 1863.4(a) imposes an obligation upon the FmHA, a breach of which is compensable in tort.[3] Because the FmHA held a security interest in the Loves' farm property that entity was obligated, the Loves submit, to pay the delinquent water assessments which the Loves owed the Harlem Irrigation District. The failure of FmHA to make the necessary payment, the Loves contend, constitutes negligence on the part of the FmHA, cognizable under the FTCA. The court disagrees.

## II.

■ The court begins its analysis by taking proper cognizance of the well established principle that the violation of a federal statute or administrative regulation by a government agency does not, standing alone, create a cause of action under the FTCA. *See, Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *United Scottish Insurance Co. v. United States*, 614 F.2d 188, 194 n. 4 (9th Cir.1979),

aff'd after remand, 692 F.2d 1209 (9th Cir.1982), rev'd on other grounds, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Younger v. United States*, 662 F.2d 580, 582 (9th Cir.1981). This principle is, of course, premised upon the fact that the FTCA, being procedural as opposed to substantive in nature, does not create new causes of action, but serves to make the United States liable in accordance with local tort law. 28 U.S.C. § 1346(b); *see, Art-Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151 (D.C.Cir.1985). Consequently, any finding of negligence must be based upon state law. *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Brock v. United States*, 601 F.2d 976, 979 (9th Cir.1979).

■ Consistent with the foregoing principle, any duty the FmHA owed the Loves cannot be founded upon 7 C.F.R. § 1863.4. Rather, the source of the duty must be Montana law. *See, Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir.1982) (citing *Younger v. United States, supra,* and

FmHA account secured by the real estate, the County Office personnel will endeavor to get the borrower to use the proceeds to pay the delinquent tax. If the amount of the proposed payment is greater than the amount of the delinquent tax, the difference will be applied on the FmHA account in accordance with the policy outlined in Subpart A and Subpart G of Part 1951 of this chapter. When a borrower owes delinquent taxes and the proceeds offered for payment are less than the amount of the delinquent tax, such proceeds will be applied on the FmHA accounts in the usual manner. In any situation in which unpaid taxes remain delinquent for a period of 2 years, a report indicating the reasons for the situation will be forwarded to the State Office for review and instruction for future servicing of the borrower's account.

(a) Prior (usually about 90 days) to the time it is legally possible for action to be taken that will cause the borrower to lose title or right of possession of the security property, or the use of essential water, the County Supervisor will contact the borrower and definitely determine if he will pay the delinquent tax immediately. If the borrower is unable or unwilling to pay the delinquent tax with his own funds after every appropriate effort has been made to have him do so, the County Supervisor will prepare and process Standard Form 1034, "Public Voucher for Purchases and Services

Other Than Personal," to cover the amount of the delinquent taxes plus the amount of any accrued penalty.

(1) If the Government is holding a mortgage other than a first mortgage on the property, Standard Form 1034 will not be prepared until the County Supervisor has determined that the prior lien holder will not pay the delinquent tax; the Government's security will be jeopardized if the delinquent tax is not paid; and, the value of the security is sufficient to justify the advance.

7 C.F.R. § 1863.2 defines the term "tax" to include irrigation and water charges which will, on nonpayment, become a lien upon the real estate prior to the mortgage securing the FmHA.

**3.** The operative portion of the Loves' amended complaint states:

Pursuant to Title 7, Section 1863.4 of the United States Code of Federal Regulations, the County Supervisor of the FHA must provide payment of any water assessments for any of its borrowers before the same become delinquent. Plaintiffs relied on defendants' obligation to pay such water assessments. Defendants knew that plaintiffs would not be able to meet their financial obligations for their livelihood and farming operations if plaintiffs were not able to harvest sufficient crops from their irrigated lands.

*United Scottish Insurance Co. v. United States, supra*). As stated by the Ninth Circuit in *Lutz:*

> The federal statute or regulation under which an employee acted only becomes pertinent when a state law duty is found to exist. The federal statute or regulation may then provide the standard for reasonable care in exercising the state law duty. (citations omitted.)

685 F.2d at 1184.

Proper analysis, then, requires the court to proceed with a determination of whether a cause of action exists under the laws of the State of Montana for the injuries allegedly sustained by the Loves. *See, Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). The FmHA argues, in essence, that no duty exists under Montana law analogous to the obligation imposed upon the FmHA by 7 C.F.R. § 1863.4. Consequently, the FmHA submits the "private person" liability required by Section 1346(b) is lacking.

■ Relying upon the rationale of *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955), the Loves correctly note that the FmHA may not escape liability in the present case by simply contending that because the payment of delinquent taxes, pursuant to 7 C.F.R. § 1863.4, is a uniquely governmental function, liability may not be

predicated upon nonfeasance in paying the delinquent assessment. *See, United Scottish Insurance Company v. United States*, 614 F.2d at 192. Albeit, the issue remains as to whether a duty, corresponding to the duty imposed upon the FmHA by 7 C.F.R. § 1863.4, exists under Montana law.

The Loves fail to point to the existence of a specific duty under Montana law analogous to the obligation imposed upon the FmHA by 7 C.F.R. § 1863.4. In fact, the glaring absence of any discussion by the Loves with respect to the statutory or decisional Montana law upon which the requisite duty is predicated, presents a rather tell-tale indication that such a duty is nonexistent.[4]

■ The Loves allude to the fact that under Montana law a duty of "good faith" is recognized as attending commercial contracts.[5] For purposes of analysis, the court accepts that the duty of "good faith" recognized by Montana law attended the relationship between the FmHA and the Loves. Nonetheless, the court is compelled to conclude that the Loves' claim regarding the purported duty of the FmHA to pay the delinquent water assessments, seeks to extend the duty of "good faith" beyond its recognized bounds. The decisional law of Montana regarding the duty of "good

---

**4.** The totality of the Loves' argument regarding satisfaction of local law requirements is embodied in the following excerpt from the Loves' brief in opposition to the FmHA's motion to dismiss:

> ... If there are similar activities whose negligent performance by a private individual under similar circumstances would result in liability under Montana law, a cause of action then exists under the Federal Tort Claims Act. In *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), the United States Supreme Court held "the Government's liability is no longer restricted to circumstances in which government bodies have traditionally been responsible for misconduct of their employees." Therefore it is not determinative in the instant case that a private individual does not engage in regulatory inspection and enforcement activities commensurate with the FmHA and its payment or nonpayment of water assessments. A private individual who conducted himself like defendants have done

would be liable under Montana law. Under *Indian Towing, supra,* there need not be a direct translation between federal and state case law. Montana courts have held banks owe a duty of good faith to their borrowers.

**5.** While this court is cognizant of the existence of such a duty under Montana law, it has rejected the proposition that jurisdiction exists under the FTCA with respect to claims advanced against the United States for breach of the duty of "good faith" attending commercial contracts in Montana. *See, Darko v. United States,* 646 F.Supp. 223 (D.Mont.1986) (relying upon *Woodbury v. United States,* 313 F.2d 291 (9th Cir. 1963)). Rather, jurisdiction over such a claim lies within the ambit of the Tucker Act (28 U.S.C. § 1491), since the claim implicates the contractual relationship between the claimant and the United States. *Darko v. United States, supra.*

faith" in the area of commercial contracts does not support the Loves' proposition, *i.e.*, that a lender has a duty to pay a borrower's delinquent taxes, assessments, etc.

Assuming the Loves' limited argument is viewed as sufficiently raising the proposition that violation of its own regulation renders the FmHA liable since it undertook a so-called "good-samaritan" activity, the court finds the attempt to impose liability under this theory to be ill fated.

As previously noted, where the Government undertakes a particular activity pursuant to the directive of a federal statute or regulation, liability under the FTCA for the negligent performance of that activity is not automatic. *See, United Scottish Insurance Co. v. United States, supra,* 614 F.2d at 193. In *Indian Towing Co. v. United States, supra,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, the Supreme Court ruled, however, that liability could be imposed upon the Government in accordance with the "good samaritan" doctrine. *Indian Towing* establishes that the Government may be liable under the FTCA for the negligent provision of services upon which the public has come to rely. *Id.* at 64–65, 76 S.Ct. at 124.

Consistent with the FTCA's requirement that governmental liability may not be determined without considering the liability of a private person in "like circumstances" pursuant to relevant state law, liability may be imposed under the "good samaritan" doctrine only if the applicable state law requirements of the doctrine are satisfied. *United Scottish Insurance Co. v. United States, supra,* 614 F.2d at 195–196. Consequently, when a claimant seeks to impose liability upon the Government via the "good samaritan" doctrine, the court must determine whether the pertinent state has adopted the doctrine, and whether the requirements of the doctrine are satisfied in the particular case.

Montana has long recognized the common law tort embodied in the "good samaritan" doctrine as currently set forth in Section 323 of the *Restatement (Second) of Torts (1965). See, Vesel v. Jardine Mining Co.,* 110 Mont. 82, 100 P.2d 75 (1945); *Jeffries v. United States,* 477 F.2d 52 (9th Cir.1973); *Trombetta v. United States,* 613 F.Supp. 169 (D.Mont.1985). Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or, (b) the harm is suffered because of the other's reliance upon the undertaking.

The Loves' reliance upon the "good samaritan" doctrine is predicated upon the supposition that the FmHA promulgated 7 C.F.R. § 1836.4 for the gratuitous benefit of those individuals indebted to the FmHA. The plain meaning of 7 C.F.R. § 1836.4, however, defies the Loves' supposition. The intent of the regulation, as may readily be ascertained from its text, is protection of the FmHA's priority position in real property securing an individual's FmHA account. *See, Moody v. United States,* 585 F.Supp. 286 (E.D.Tenn.1984). The Loves simply had no right to rely upon the FmHA paying their delinquent assessments since the regulation was not promulgated for their benefit.[6]

---

6. The factual context of this case itself serves to illustrate the preposterous nature of the Loves' position regarding the intent of 7 C.F.R. § 1863.-4. The evidence adduced at trial revealed that the Loves made a conscious decision not to pay their water assessments. In 1983, the FmHA paid the Loves' delinquent taxes for the years 1980 through 1982, in the amount of $23,297.56. A sum which included the Loves' delinquent water assessments. Again in 1986, the FmHA paid the sum of $21,057.57 in delinquent water assessments and taxes for the years 1983 through 1985.

The evidence presented failed to establish that the Loves were unable to pay these delinquent taxes. In fact, during the pertinent period of time, the Loves negotiated a land purchase for forty thousand dollars in cash. The court

In the absence of a legal duty or obligation, there can be no actionable negligence. *See, Krone v. McCann*, 196 Mont. 260, 638 P.2d 397 (1982); *Roy v. Neibauer*, — Mont. ——, 623 P.2d 555 (1981); *Green v. Hagele*, 182 Mont. 155, 595 P.2d 1159 (1979). Accordingly, the Loves' complaint fails to establish the requisite duty upon which an action for negligence can be predicated.

For the reasons set forth herein,

IT IS ORDERED that the present complaint be, and the same hereby is, DISMISSED for failure to state a claim upon which relief can be granted.

views an acceptance of the proposition advanced by the Loves as a determination by this court that each and every obligee to FmHA holds the "key" to the United States Treasury; a "key" to be utilized by the obligee as he/she sees fit. This court cannot accept the Loves' implicit conclusion that such a result was within the contemplation of the Secretary of Agriculture at the time 7 C.F.R. § 1863.4 was promulgated.