Clinton W. LOVE, Sr., and Rose Mary Love, husband and wife, Plaintiffs,

v.

UNITED STATES of America, United States Department of Agriculture, Farmers Home Administration, Philip A. Young, Claude Hargrove, Arthur E. Lund, Theodor L. Hebnes, Roger Meredith, Rodger VanValkenburg, Dale Gilbert, Jim Walker, Stanley Faught and Gilbert L. Anderson, Defendants.

No. CV–84–167–GF.

United States District Court,
D. Montana,
Great Falls Division.

Feb. 2, 1994.

---

618

Robert M. Kampfer, Kampfer Law Office, Great Falls, MT, Paul J. Petit, Petit Law Office, Missoula, MT, for Clinton W. Love, Sr., Rose Mary Love.

Clinton W. Love, Sr., pro se.

Rose Mary Love, pro se.

George F. Darragh, Jr., Office of the U.S. Atty., Great Falls, MT, Elizabeth A. Strange, Ned W. Greenberg, U.S. Dept. of Justice, Washington, DC, for U.S. Dept. of Agriculture, Farmers Home Admin.

George F. Darragh, Jr., Office of U.S. Atty., Great Falls, MT, Elizabeth A. Strange, U.S. Dept. of Justice, Washington, DC, for remaining defendants.

George F. Darragh, Jr., Office of the U.S. Atty., Great Falls, MT, for Roger Meredith.

## FINDINGS OF FACT,
### and
## CONCLUSIONS OF LAW

HATFIELD, Chief Judge.

The plaintiffs, Clinton W. Love, Sr. and Rose Mary Love, instituted the present action against the United States of America, acting through the Farmers Home Administration ("FmHA"), seeking to recover monetary damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.[1] The matter came on for trial before the court, the Honorable Paul G. Hatfield presiding, sitting without a jury, on the 8th day of March, 1993. Mr. Robert M. Kampfer and Mr. Paul J. Petit appeared as counsel on behalf of the Loves. Ms. Elizabeth A. Strange and Mr. Ned W. Greenberg appeared as counsel for the defendant, United States of America. The court, having heard and considered the testimony and evidence presented by the respective parties, enters the present findings of fact and conclusions of law in satisfaction of Fed.R.Civ.P. 52(a).

### FINDINGS OF FACT

Based upon the testimony and evidence presented, I find it true that:

1. The Consolidated Farm and Rural Development Act ("CFRDA"), 7 U.S.C. §§ 1921, et seq., authorized the Secretary of

---

1. Count II of plaintiffs' complaint asserted claims, predicated upon *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971), against the individual defendants Philip A. Young, Claude Hargrove, Arthur E. Lund, Theodor L. Hebnes, Roger Meredith, Roger Van Valk-enburg, Dale Gilbert, Jim Walker, Stanley Faught and Gilbert L. Anderson. On March 1, 1993, this court granted the individual defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56, with respect to Count II of plaintiffs' complaint.

Agriculture to make and insure loans to farmers and ranchers in the United States, subject to the conditions set forth in the statute and regulations promulgated thereunder.

2. The Farmers Home Administration ("FmHA"), as an agency of the United States Department of Agriculture, was charged with the responsibility of administering loans under the CFRDA.

3. Prior to 1984, the Loves obtained eight agricultural loans under either the CFRDA or 7 U.S.C.Prec. § 1961 Note. The loans were secured by various real estate mortgages, security agreements, motor vehicle liens and financing statements executed in favor of the FmHA.

4. As of January, 1984, the Loves had an outstanding loan balance with the FmHA in excess of one million two hundred thousand dollars, including principal and interest.

5. As of June 5, 1984, the Loves had defaulted on all eight agricultural loans. In addition, the Loves had defaulted on a Contract for Deed to purchase certain real property from Jack Sharp, hereinafter referred to as the "Sharp property," as well as a secured loan from the First Security Bank of Malta ("Bank of Malta").

6. During the pertinent time hereto, the Loves were members of a nationwide class certified by the district court in *Coleman v. Block,* 580 F.Supp. 192 (D.N.D.1983). The class included:

all persons who have obtained a farmer program loan from the Farmers Home Administration, and who are or may be eligible to obtain a farmer program loan from the Farmers Home Administration, and whose loans are or will be administered in the Farmers Home Administration offices located throughout the United States.

7. On November 21, 1983, the Loves filed a voluntary petition in bankruptcy, pursuant to Chapter 11, Title 11 of the United States Code, with the United States Bankruptcy Court for the District of Montana.

8. On April 6, 1984, the FmHa moved the bankruptcy court for an order lifting the automatic stay imposed by 11 U.S.C. § 362,

so that it could "take such action as is necessary to protect its security interest in all real and personal property of the defendant debtors."

9. On June 5, 1984, the bankruptcy court held a hearing on the FmHA's motion to lift the automatic stay in the Loves' bankruptcy proceeding, as well as similar motions filed on behalf of Jack Sharp and the Bank of Malta.

10. On June 8, 1984, the bankruptcy court entered an order lifting the automatic stay as to the Bank of Malta. Accordingly, the Bank of Malta proceeded to repossess certain sheep owned by the Loves and in which the Bank held a security interest.

11. On June 15, 1984, the bankruptcy court entered an order lifting the automatic stay as to Jack Sharp. Sharp proceeded to foreclose his interest in the Sharp property, *i.e.,* closing the escrow account, recording the quitclaim deed from the Loves, and taking possession of the property.

12. On June 25, 1984, the bankruptcy court entered an order granting the FmHA's motion to lift the automatic stay and directed the Loves turn over the FmHA's secured collateral on or before June 30, 1984. The bankruptcy court's order also authorized the FmHA to repossess its secured collateral in the event the Loves did not comply with the bankruptcy court's order.

That should debtors not comply with this order the Court hereby directs the United States Marshal for the District of Montana to accompany and assist FmHA in the repossession of its secured collateral.

*In re: Clinton W. Love, Sr. and Rose Mary Love, Debtors,* No. 483–00487 (Bankr. D.Mont. June 25, 1984).

13. The record reveals the Loves did not appeal the bankruptcy court's June 25, 1984, order, nor did they request the court amend the order to extend the deadline for turning over the secured collateral.

14. The Loves failed to turn over any collateral to the FmHA by the June 30, 1984, deadline established by the bankruptcy court.

15. On June 25, 1984, Jack Sharp, through his attorney, sent the Loves a letter requesting they remove livestock and machinery that remained on the Sharp property. The letter provided, *inter alia:*

It has now come to our attention that Farmers' Home [Administration] will have all of its security removed by July 1, 1984. We intend to lease said premises as of that date. Accordingly, you should also have any remaining property removed by that date.

16. The Sharp property was leased to Robert Wolsted effective July 1, 1984. Wolsted advised Sharp he did not want to move onto the property until it was clear of the Loves' livestock and machinery. Consequently, Sharp, through his attorney, contacted the FmHA and threatened to assess fees, as of July 1, 1984, for the Loves' chattel property left on the land.

17. On July 5, 1984, Claude Hargrove, the FmHA's County Supervisor, visited the Sharp property and confirmed the Loves had abandoned a number of "mixed" pigs, *i.e.,* pigs of different sizes and ages, on the property, as well as certain machinery in which FmHA held a security interest. Hargrove further testified the pigs were in poor condition, were not being fed or cared for properly, and were in danger of perishing.

18. As a result, the FmHA, on July 6, 1984, took possession of approximately 115 pigs which had been abandoned on the Sharp property. Hargrove sold the pigs "as is" to a farmer in the Browning, Montana area, Joe Evans, for $3,146.40 (17,480 pounds at 18¢ per pound), less $306 for the cost of trucking. The net proceeds of $2,840.40 were credited to the Loves' outstanding debt owed to the FmHA.

19. Hargrove testified he sold the pigs to Evans because the only available public auction for pigs was scheduled for July 12, 1984, in Kalispel, Montana, which would have entailed additional transport and feeding expenses. Hargrove further testified mixed pigs bring a lower market price than pigs of consistent age and weight and, in addition, the market price for pigs is susceptible to dramatic reduction if the pigs are in poor condition.

20. On July 10, 1984, the United States District Court for the District of Montana entered an order directing the United States Marshal for the District of Montana to accompany and assist the FmHA in repossessing its secured collateral.

21. On July 11, 1984, the FmHA, with the assistance of the United States Marshal Service, repossessed three grain augers, a feed grinder and a gyro mower which had been abandoned on the Sharp property.

22. The machinery was taken directly to Service Supply Company, a farm implement dealership in Cut Bank, Montana. It is undisputed that Clinton Love subsequently observed the machinery on Service Supply's sales lot and was advised the machinery was for sale.

23. Service Supply ultimately sold the feed grinder at a private sale. The grinder, which had an appraised value of $2,000, was sold for $3,000, less a seven percent sales commission of $210. The net proceeds of $2,790 were credited to the Loves' outstanding debt owed to the FmHA. The feed grinder was the only piece of machinery Service Supply was able to sell by private sale.

24. On or about February 12, 1987, a notice was sent, via certified mail, to the Loves' last known address, informing them that a public auction of certain repossessed farm machinery would be held at 1:00 P.M. on February 24, 1987, at Service Supply in Cut Bank, Montana.

25. Notices indicating the time and place of the public auction, together with a description of the farm machinery, were posted in the farm implement dealerships in Cut Bank, as well as in the local FmHA office, the courthouse and in various local banks. In addition, an advertisement was published in a local newspaper.

26. Clinton Love testified he received actual notice of the auction through reading the advertisement in the newspaper.

27. Clinton Love attended the auction and purchased the 6-inch and 8-inch augers, as well as a 7 horsepower motor.

28. The proceeds from the auction, *i.e.*, $534.91, were credited to the Loves' outstanding debt owed to the FmHA.

29. Prior to the auction, a 4–inch grain auger with an electric motor disappeared from Service Supply's lot. The appraised value of the auger, *i.e.*, $75, was credited to the Loves' outstanding debt owed to the FmHA.

The following conclusions of law, insofar as they may be considered findings of fact, are so found by this court to be true in all respects.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of both the subject matter and parties to this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Consequently, the liability of the United States of America for the purported tortious acts of the Farmers Home Administration, an agency of the United States Department of Agriculture, is determined under the law of the State of Montana, in the same manner and to the same extent it would be determined for a private individual under that same law. 28 U.S.C. § 2674.

2. It is beyond dispute that the violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA. *See, Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Younger v. United States*, 662 F.2d 580, 582 (9th Cir.1981). "[F]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." *Klett v. Pim*, 965 F.2d 587, 598 (8th Cir.1992), *quoting, Gelley v. Astra Pharmaceutical Prod., Inc.*, 610 F.2d 558, 562 (8th Cir.1979). *See also* 28 U.S.C. § 1346(b).

3. Consistent with the foregoing principle, any duty the FmHA owed the plaintiffs cannot be founded upon 7 U.S.C. § 1981a. Rather, the source of the duty must be Montana law. *Love v. United States Department of Agriculture*, 647 F.Supp. 141, 144 (D.Mont. 1986), *aff'd* 848 F.2d 198 (9th Cir.1987). *See*

*also, Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir.1982), *citing, Younger v. United States*, 662 F.2d 580 (9th Cir.1981).

> The federal statute or regulation under which an employee acted only becomes pertinent when a state law duty is found to exist. The federal statute or regulation may then provide the standard for reasonable care in exercising the state law duty.

*Lutz, supra,* 685 F.2d at 1184.

4. In the case *sub judice*, plaintiffs assert the FmHA disposed of their collateral without the required statutory notice under 7 U.S.C. § 1981a, as interpreted by *Coleman v. Block*, 580 F.Supp. 192 (D.N.D.1984). As set forth above, a violation of 7 U.S.C. § 1981a, as interpreted by *Coleman*, cannot be the source of any liability under the FTCA. Rather, the source of any duty the FmHA owed the Loves must be Montana law. *Love, supra,* 647 F.Supp. at 144.

5. The Ninth Circuit Court of Appeals, in *Love v. United States*, 915 F.2d 1242, 1245–46 (9th Cir.1989), specifically identified Mont. Code Ann. § 30–9–504(3)(a) as imposing a duty analogous to the *Coleman* interpretation of 7 U.S.C. § 1981a.

6. Mont.Code Ann. § 30–9–504(3)(a) (1991) requires a secured party give notice to the debtor before disposing of collateral.

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement re-

nouncing or modifying his right to notification of sale. . . .

Mont.Code Ann. § 30–9–504(3)(a) (1991).

7. Montana law further provides a debtor may sue the secured party for any damages resulting from the secured party's failure to provide the requisite notice prior to disposing of collateral. *Love, supra,* 915 F.2d at 1246.

> If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by failure to comply with the provisions of this part. . . .

Mont.Code Ann. § 30–9–507(1) (1991).

■ 8. Where a mortgagee or lienholder disposes of the property without complying with statutory requirements, "he is guilty of a conversion." *Love v. United States, supra,* 915 F.2d at 1246, *quoting, Trudell v. Hingham State Bank,* 62 Mont. 557, 205 P. 667, 669 (1922).

9. Having reviewed the record herein, together with the evidence presented at trial, the court concludes the Loves have failed to present any evidence to establish the sales of the secured collateral were not conducted in a commercially reasonable manner.

■ 10. The court further concludes the Loves received sufficient notice, in accordance with the requirements of Mont.Code Ann. § 30–9–504(3)(a), prior to the FmHA's repossession and disposition of the secured collateral.

11. Mont.Code Ann. § 30–1–201(25) provides a person has "notice" of a fact when:

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. . . .

12. In this court's opinion, the Loves had actual knowledge, based upon the bankruptcy court's June 25, 1984, order, that once the automatic stay was lifted, the FmHA would be entitled to repossess and dispose of the secured collateral. Moreover, in light of the bankruptcy court's previous orders authorizing Jack Sharp and the Bank of Malta to repossess secured collateral, the Loves, based upon the facts and circumstances known to them at the time in question, were aware that the FmHA was authorized to sell or otherwise dispose of the secured collateral. Accordingly, the FmHA satisfied the notice requirement of Mont.Code Ann. § 30–9–504(3)(a) with respect to the livestock and machinery repossessed from the Sharp property.

■ 13. In any event, the Loves were not entitled to notice regarding the sale of the abandoned pigs because the pigs were perishable and threatening to decline speedily in value. *See,* Mont.Code Ann. § 30–9–504(3)(a) (notice of disposition is not required if the "collateral is perishable or threatens to decline speedily in value"). Nevertheless, Clinton Love had actual notice of the sale of the pigs in time to "tak[e] part in the sale or other disposition if [he] so desire[d]." *See, Lilly v. Terwilliger,* 244 Mont. 93, 796 P.2d 199, 202 (1990).

■ 14. The sale of the pigs was commercially reasonable. The reasonableness of the sale is determined by the manner in which the sale was conducted, not the price received. *Ottersen v. Rubick,* 246 Mont. 93, 803 P.2d 1066, 1068–69 (1990), *quoting, Dulan v. Montana National Bank of Roundup,* 203 Mont. 177, 661 P.2d 28, 32 (1983). In light of the pigs' poor condition, the fact they were of mixed sizes and ages, and the next scheduled sale in reasonable proximity was not for six days in Kalispel, Montana, the FmHA acted in a commercially reasonable manner when it sold the pigs "as is," for cash upon delivery, and thereby avoided additional storage and feeding costs, as well as a reduction in value.

15. "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not

made in a commercially reasonable manner." Mont.Code Ann. § 30–9–507(2). In the present action, the Loves failed to present any evidence that the price paid for the subject pigs was less than the fair market price for mixed pigs of poor quality in Montana in July, 1984.

16. With respect to the repossessed machinery, Mont.Code Ann. § 30–9–504(3)(a) requires a debtor-in-default be sent "reasonable notification of the time after which any private sale or other intended disposition is to be made." The record reveals the Loves had actual notice of the time after which the machinery would be sold by private sale or auction at Service Supply in Cut Bank, Montana. In addition, the Loves offered no evidence challenging the commercial reasonableness of either the private sale of the grinder/mixer or the sale, at public auction, of the remaining machinery.

■ 17. In addition to failing to prove the elements of conversion identified by the Ninth Circuit in *Love, supra,* the Loves have failed to prove the essential elements of an action for conversion under Montana law, *i.e.,* (1) ownership of the property; (2) a right of possession; and (3) unauthorized dominion over the property by another resulting in damages. *Lane v. Dunkle,* 231 Mont. 365, 753 P.2d 321, 323 (1988). *See also, Gebhardt v. D.A. Davidson & Co.,* 203 Mont. 384, 661 P.2d 855, 858 (1983).

■ 18. The Loves have failed to prove they enjoyed any right to possession of the subject property. Pursuant to the bankruptcy court's June 25, 1984, order, the FmHA was authorized to take possession of the secured property in the event the Loves failed to turn over the secured property on or before June 30, 1984. *See, In re: Clinton W. Love, Sr., and Rose Mary Love,* No. 483–00487 (Bankr.D.Mont. June 25, 1984).

19. The Loves lost any right to possession upon defaulting on the subject security agreements. Mont.Code Ann. § 30–9–503 provides that "a secured party has on default the right to take possession of the collateral." Furthermore, "in taking possession a secured party may proceed without judicial process ... or may proceed by action." Mont.Code

Ann. § 30–9–503. Accordingly, the FmHA was authorized to take possession and exercise dominion over its secured collateral once the Loves defaulted on the various security agreements.

20. Consequently, absent any right of possession in the secured collateral, the Loves' conversion claim fails as a matter of law.

■ 21. The Loves have also failed to establish the FmHA exercised "unauthorized dominion" over their property. As set forth above, the FmHA was entitled to possession of the secured collateral upon the Loves' default. *See,* Mont.Code Ann. § 30–9–503. Furthermore, the bankruptcy court's June 25, 1984, order established the FmHA's right to take possession of the property. The Loves' arguments to the contrary are unpersuasive. Accordingly, the court concludes plaintiffs' claim for conversion fails as a matter of law.

■ 22. The court rejects the Loves' attempt to predicate a claim for relief upon the *Coleman* injunction. In *Coleman,* the court enjoined the FmHA from foreclosing on its loans without first providing the borrower with notice and an opportunity for a hearing. *Love, supra,* 915 F.2d at 1244. The hearing served to provide the borrower with the opportunity to establish his eligibility for loan deferral, provided he could establish his loan default was a result of circumstances beyond his control. *Id.*

23. The Loves failed to present any evidence to establish their default was "a result of circumstances beyond their control". Rather, the evidence conclusively establishes the Loves made the conscious decision to invest in other property rather than make the payments on their outstanding loans. Assuming, *arguendo,* the *Coleman* injunction established a duty on the part of the FmHA, the Loves have completely failed to establish their entitlement to loan deferral under *Coleman.*

24. Furthermore, the *Coleman* injunction was subject to four exceptions, one of which permitted the FmHA "to take the necessary steps to protect the secured property" when the borrower had abandoned the property

and it was at substantial risk of irreparable injury. *Coleman*, 580 F.Supp. at 211. As set forth previously, the Loves had abandoned livestock and machinery on the Sharp property, and the FmHA was forced to take the necessary steps to protect its secured property. Accordingly, the FmHA did not, contrary to the Loves' argument, violate the *Coleman* injunction.

25. Finally, the court rejects the Loves' attempt to impose tort liability upon the United States based upon the FmHA's purported (1) failure to release the Loves' 1984 wool crop; and (2) decision to allow the Bank of Malta to repossess certain secured collateral. The Loves have failed to prove any factual basis for their purported claims for relief.

26. In addition, the Loves have failed to advance a cogent argument, let alone cite any recognized authority, in support of their purported claims for relief. On the contrary, the Loves' claims directly contravene the well established principle that violation of 7 U.S.C. § 1981a, as interpreted by *Coleman,* cannot be the source of liability under the FTCA. 28 U.S.C. § 2674; *Love,* 656 F.Supp. at 850. The private person analog having been established, *i.e.,* Mont.Code Ann. § 30–9–504(3)(a), *Coleman* is neither controlling or even relevant to the question of liability under the FTCA. Rather, the source of any duty the FmHA owed the Loves must be Montana law. *Love, supra,* 647 F.Supp. at 144. The Loves have failed to cite any Montana law that would create a cause of action based upon the FmHA's alleged "acts of conversion."

Therefore, for the reasons set forth herein, the court concludes the Loves have failed to prove the tort of conversion or any breach of duty under Montana law. As a result, the court concludes the Loves are entitled to take nothing by way of their complaint, and that judgment is appropriately entered on behalf of the defendant United States of America.

IT IS SO ORDERED.