No. 81-60

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

MAXINE M. KRONE,

Plaintiff and Appellant,

-vs-

REX T. McCANN and DOROTHY G. McCANN,
individually and as officers of, and
d/b/a SUPERIOR HOMES REALTORS, INC.,

Defendants and Respondents.

Appeal from: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell, The Honorable
Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Boschert & Boschert, Billings, Montana

For Respondents:

Keefer, Roybal, and Hanson, Billings, Montana

Submitted on Briefs: August 6, 1981

Decided: JAN 5 - 1982

Filed: JAN 5 - 1982

Thomas J. Kearney
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action in negligence with the plaintiff, Maxine Krone, seeking recovery of damages for an injury she received while she was a business invitee on the property of the defendants. Defendants moved for summary judgment on all issues; plaintiff moved for summary judgment on the issue of liability only. The District Court of the Fourteenth Judicial District, Musselshell County, granted the defendants' motion. The plaintiff appeals.

On June 13, 1976, appellant wrenched her knee while she was walking on rural property owned by respondents. Respondent Rex McCann, as a realtor for Superior Homes, was showing the property to appellant for her possible purchase. At the time of the injury, McCann was looking for a well located on the property, and the appellant was following him.

In her deposition the appellant gave the following account of how her injury occurred:

"Q. Would you explain to me what happened that day that resulted in some injury to you? A. Mr. McCann was showing us the place. Is that what you mean?

"Q. Um-hum, and what happened? A. We -- He was driving us around in his vehicle. And we stopped on the road, got out and looked at one well that we could see. Or what you want to call it. And then he was to show us another well that was right -- right around there.

"Q. Go ahead. What happened? A. Well, I was following him, and . . . hurt my leg.

"Q. Well, how did you come to hurt your leg? A. Like I said, I was following him, 'cause he couldn't find this one well. And . . . I stumbled or fell over some -- I really couldn't tell you what -- some debris or whatever it was.

"Q. When you say it was 'debris,' do you

-2-

mean to say that -- Can you describe what it was in terms of -- Was it metal? Was it wood? Was it dirt? What was it? A. I really don't know. It was . . . something that was -- There had been an old corral at one time that had been . . . oh, I suppose what I would call the 'home corral place' where they branded the cattle or whatever, and there was a lot of that laying around.

"Q. It was in the vicinity of an old corral, is that right? A. Yes. Well, I mean there was a lot of logs and stuff laying around.

"Q. Now was there a path? Were you following something, or were you-- A. I was following Mr. McCann.

"Q. Okay. Now, was he immediately in front of you? Was he 50 feet in front of you? How much distance separated you from Mr. McCann? A. I don't remember exactly, about 15 feet.

"Q. Was your son with you? A. My son was with me, yes.

"Q. Was he at your side, or was he behind you or in front of you? A. He was walking beside me, I think.

"Q. Now, did you fall to the ground? A. No, I didn't go clear to the ground.

"Q. So what you're saying is -- kind of like you twist your ankle, you twisted your knee? Would that be a fair statement? A. Yes. Well it happened awful fast-like. And so I just -- And that's been a few years ago, and I just . . . Whatever happened, it hurt like -- terrible at the time.

". . .

"Q. What time of the day was this? A. It was about 2:00 o'clock in the afternoon. Approximately. Now, I couldn't put it right on the -- pinpoint it right at the minute.

"Q. Any problem with visibility in that area? A. No. Hum-um* (*negative response).

"Q. Were you wearing your glasses at the time? A. Yes. Um-hum.

"Q. Was this an area that was overgrown with bushes or shrubs or . . .? A. There was tall grass and weeds.

"Q. And was it deep grass, or was it . . .? A. I don't remember, but I think about knee

high or more.

"Q. There wasn't anything that prevented you from seeing the ground as you walked over it, was there? A. Yes, but I just walked and was following Mr. McCann and we were looking for this well. And he should have been where the well was right away. And if we'd have gone right from the car up to where it was, the well was at, it wouldn't have happened. And there -- if he had had all that stuff cleaned off, cleared off, like we did afterwards, it wouldn't have happened.

"Q. So what you're saying is that there was something that was on the ground that was what you tripped on, but you don't remember what it was? A. Well, I wouldn't know what it was exactly, but apparently it was an old corral pole, or mound of dirt.

"Q. And you don't know if it was a natural accumulation of dirt or rock or if it was an unnatural accumulation, is that right? A. A natural -- Natural or unnatural. Could have been both.

". . .

"Q. It wasn't something that you fell in? A. No.

"Q. It's something that you tripped over, is that right? A. I just cannot really say what it was, because it happened, like I said, so fast that -- that -- And when it happened, it was very painful. Let's put it that way." (Emphasis added.)

After twisting her knee, appellant went back to McCann's car and returned to Billings. She did not go to a doctor at that time. About a year later, she went to see a doctor for a checkup and to ask about her knee. She was referred to another doctor who later operated on her knee. She was in the hospital for five days and was in a cast for about six weeks. She stated in her deposition that the surgery did not stop the pain she still has from her knee.

The parties agree that the only issue on review is whether the District Court erred by granting respondents' motion for summary judgment.

-4-

Under Rule 56(c), M.R.Civ.P., a summary judgment is proper only if the record discloses no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Reaves v. Reinbold (1980), ____ Mont. ____, 615 P.2d 896, 37 St.Rep. 1500; Rumph v. Dale Edwards, Inc. (1979), ____ Mont. ____, 600 P.2d 163, 36 St.Rep. 1022. The party moving for summary judgment has the burden of showing the complete absence of any genuine issue as to all facts which are deemed material in light of those substantive principles which entitle him to a judgment as a matter of law. Big Man v. State (1981), ____ Mont. ____, 626 P.2d 235, 38 St.Rep. 362; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613. Once the movant has established that no material issues of fact exist, the burden shifts to the opposing party to raise an issue of fact. As we stated in Rumph:

> "While the initial burden of proof must attach to the moving party, that burden shifts where the record discloses no genuine issue of material fact. Under these circumstances, the party opposing the motion must come forward with substantial evidence raising the issue. [Citations omitted.] Once the burden has shifted, the party opposing the motion is held to a standard of proof which is as substantial as that initially imposed upon the moving party. [Citation ommitted.]" 600 P.2d at 167.

It is also well established in Montana that "[a]ctionable negligence arises only from a breach of legal duty." Rennick v. Hoover (1980), ____ Mont. ____, 606 P.2d 1079, 1081, 37 St.Rep. 308, 310, quoting Jonosky v. Northern Pacific Ry. Co. (1920), 57 Mont. 63, 72, 187 P. 1014, 1015, and Cassady v. City of Billings (1959), 135 Mont. 390, 393, 340 P.2d 509, 510.

As we stated recently in Rennick:

".  .  . in order for there to be a genuine
issue of material fact in a negligence case
there must be a duty imposed upon the defen-
dant and allegations which, if proven, would
support a finding of a breach of the duty."
606 P.2d at 1081.

The parties agree that the appellant was a business
invitee when she wrenched her knee while walking on the
respondents' property.  It is well settled in this state
that a property owner's duty toward an invitee is to use
ordinary care to keep the premises reasonably safe and to
warn the invitee of any hidden or lurking dangers. Cassady,
supra, 340 P.2d at 510, quoting Milasevich v. Fox Western
Montana Theatre Corp. (1946), 118 Mont. 265, 165 P.2d 195,
197.

While the property owner has the above-stated duty,
it has been recognized many times by this Court that the
property owner is not an insurer against all accidents and
injuries to invitees.  Scott v. Robson (1979), _____ Mont.
_____, 597 P.2d 1150, 1155, 36 St.Rep. 1273, 1279-1280,
citing Dunham v. Southside National Bank of Missoula (1976),
169 Mont. 466, 548 P.2d 1383, and Cassady, supra, 340 P.2d
at 510-511.  In Rennick, we noted:

"'The true ground of liability is his [the
property owner's] superior knowledge over
that of business invitees of the dangerous
condition and his failure to give warning of
the risk, however, he is not an insurer
against all accidents which may befall them
upon his premises.' . . . McIntosh v. Linder-
Kind Lumber Co. (1964), 144 Mont. 1, 6, 393
P.2d 782, 785." 606 P.2d at 1081. (Emphasis
added.)

In Blakney v. Associated Subdivisions, Inc. (1963),
97 R.I. 34, 195 A.2d 234, 3 A.L.R.3d 970, a real estate
agency was held liable for injuries to the plaintiff when
she fell in a rodent hole while looking at a partially

cleared lot offered for sale by the agency. This lot was in the City of Cranston, Rhode Island, and was being developed for home sites.

Blakney is readily distinguishable from the case before us. In Blakney, the plaintiff's injuries occurred on a city lot. She was not aware that rodent holes were in the lot. Here, the appellant was walking through an open field in rural country. She stumbled over something she characterized as "debris," a "mound of dirt," or an "old corral pole." While she was unsure of exactly what she tripped over, she could see that there were "logs and stuff lying around." Since she knew of the general condition of the ground, no duty rests on the defendant to warn her of it.

More importantly, the fact is undisputed that the appellant cannot describe what caused her injury. She does not know if it was merely a mound of dirt or an old corral pole.

In an action for negligence, a plaintiff must produce evidence from which it can be reasonably inferred that negligent conduct on the part of the defendant or its agents was the proximate cause of the plaintiff's injuries. Flansberg v. Montana Power Company (1969), 154 Mont. 53, 460 P.2d 263, approved in Scott v. Robson, supra, 597 P.2d at 1155. Here, the appellant simply does not know exactly what caused her injury. As noted above, the respondents cannot be the insurers of the appellant and held liable for her injury merely because an accident happened on their land.

Upon respondents' showing that no material issues of genuine fact were still in dispute, the burden shifted to the appellant to come forward by affidavit and substantial

evidence and raise an issue of material fact. Appellant has failed to meet this burden. She has presented no substantial evidence indicating that respondents had breached a duty owed to her or that respondents' actions were a proximate cause of her injury.

The summary judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices