[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellants, Diana Stein et al., appeal from a decision of the Montgomery County Court of Common Pleas granting summary judgment in favor of appellee, the City of Oakwood. Stein stepped in a hole while crossing through a grassy median that ran down the center of her street, causing her to break her ankle. She claimed that the hole constituted a nuisance on public ground that the city had a duty to repair and that the city was not immune from suit for breach of that duty. The trial court found that the city could not be held liable because Stein knew the condition of the ground before she stepped onto it and because she failed to exercise due care for her own safety. We find that the city did not owe Stein a duty to repair the hole in question or warn her of it, because she was aware of the potential for such holes in the median and because the hole was an ordinary hazard that a person should expect to find on natural ground. Thus, the hole did not constitute a nuisance within the meaning of R.C. 2744.02(B)(3) and R.C. 723.01 as those statutes applied at the time of the accident. Therefore, we affirm the judgment of the trial court.
 I.
Appellant, Diana Stein, lives in a house on Beverly Place in the City of Oakwood, where she lived at the time of her injury. A raised, grassy median divides the eastbound and westbound lanes of Beverly Place. The City of Oakwood maintains the grassy median by cutting the grass, raking fallen leaves, etc. Trees, flowers, and shrubbery are planted at various points along its length.
On July 30, 1994, Stein crossed the median to go to a neighbor's house. She had agreed to take care of her neighbor's dog while the neighbor was away, and she was crossing the median to put the dog back in the house. Stein's own dog was walking along with her as she crossed the street, although he was not on a leash. While she was crossing the median, she saw a car coming toward her down the street. She looked down to see if her dog was still next to her. Then, the person from the car yelled to her, and she waved back.
At some time near when Stein waved to the car, she stepped into a hole in the ground near the center of the median. The hole was 8-10 inches long, 2-3 inches wide, and 6-8 inches deep. Grass had grown over the hole, making it difficult to see. Stepping into the hole caused Stein to fall and break her ankle.
In her deposition testimony and in an affidavit, Stein related that she was aware, in the past, of holes in the median ground. She testified that a tree used to stand at or near the place where she crossed the median. The tree was removed sometime in the early 1980's and its removal left holes in the ground. She remembered that her children used to play in the puddles that formed in the holes after a rainfall. In her affidavit, Stein explained that she had not noticed any holes in the median for some years before the accident and that she had assumed that they were filled in, either by the city or through natural processes.
Taking cognizance of Stein's testimony, the trial court found that she had knowledge of ruts in the median and that such ground defects were to be expected in the grassy area. Thus, the court found that the city did not breach any duty in failing to repair the hole. The trial court further found that, by allowing herself to be distracted by the passing car, Stein failed to exercise due care for her own safety. For those reasons, the court rendered summary judgment in favor of Oakwood. Appellants timely appeal from that judgment.
 II.
Appellants raise the following as their first assignment of error:
 The trial court erred in granting summary judgment in Appellee's favor because reasonable minds can differ as to whether Appellant had sufficient knowledge of the hole in the ground.
 Appellants contend that genuine issues of fact exist relating to Stein's knowledge of the condition that caused her injury. Although Stein admits that she was aware of holes in the median ground some years before the accident, she claims that, for several years, she had not seen any holes, and she had come to believe that they were filled in. Thus, appellants argue, the extent of Stein's knowledge was in dispute and could not provide a basis for summary judgment.
Appellate review of a summary judgment determination is denovo, because the propriety of granting summary judgment is a question of law. Williams v. Veterans of Foreign Wars, BrookvilleMem. Post No. 3228, Inc. (1994), 99 Ohio App.3d 213, 218. A movant is entitled to summary judgment only if he demonstrates:
 (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
 Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; see also Civ.R. 56(C). The party seeking summary judgment "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party has met that burden, the non-moving party must then meet the reciprocal burden of showing that a genuine issue of material fact does exist.
The City of Oakwood's potential for liability in this case is governed by R.C. 2744.02 and 723.01 as those statutes existed at the time of the accident. Since 1985, R.C. 2744.02 has maintained a statutory form of immunity for political subdivisions that replaced the common-law doctrine of sovereign immunity abrogated by the Supreme Court opinion in Haverlack v. Portage Homes, Inc. (1982), 2 Ohio St.3d 26, 30. The statute grants the state's subdivisions immunity from suit for civil damages resulting from injury, death, or loss to persons or property, but that immunity is subject to certain enumerated exceptions. In July of 1994, R.C. 2744.02(B)(3) provided an exception relevant to Stein's injury. The provision read as follows:
 Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.[1]
 Appellants' claim rests on a determination that the median was a "public ground" within the meaning of this exception and that the hole that caused her injury was a "nuisance" for which the city could be held liable.
In 1994, R.C. 723.01 provided another means of assessing liability against the city. Then, as now, R.C. 2744.02(B)(5) recognized that political subdivisions could be held liable if another section of the Revised Code expressly imposed liability. R.C. 723.01 creates a duty for municipalities to maintain public grounds. At that time, it provided as follows:
 Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance.
 R.C 723.01, which predated the enactment of statutory sovereign immunity, long provided an independent means of asserting liability against a municipality.[2] Nevertheless, the liability provisions of R.C. 723.01 and 2744.02(B)(3) were essentially identical.
Under both of these statutory provisions, a municipality could be held liable if a defect that caused injury amounted to a nuisance. Thus, even if a municipality was not negligent, a claimant could overcome the defense of sovereign immunity if his claim was predicated on an absolute nuisance. See Harris v.Findlay (1938), 59 Ohio App. 375, 381-82 (holding city liable for death caused by a fireworks bomb). Immunity also did not apply to a claim based on qualified nuisance or a nuisance in fact, i.e. a claim alleging injury that resulted from a city's negligent performance of the duty to repair roadways or public grounds. See 54 Ohio Jurisprudence 530-31, Highways, Streets, and Bridges, Section 412. In this regard, the duty owed by a municipality was one of ordinary care. Id., Section 411, at 526; see also Josephv. Portsmouth (1975), 44 Ohio St.2d 155, 158 (holding that, under R.C. 723.01, a city owed pedestrians a duty of ordinary care in maintaining a park strip that ran along the side of a street). Appellants contend that the city was negligent in failing to repair the hole in the median and that, therefore, the city was not immune.
The city contends that, even if it was not immune from suit, it did not breach its duty of care. It notes that there is no duty to protect individuals who come upon a premises from dangers that are known to them. See Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of syllabus. Accordingly, the city asserts that Stein knew about the hole in the median when she injured herself. In support of its position, it excerpts the following colloquy from Stein's deposition:
 Q. So if you knew the hole was there since the mid-1980's, and you were walking across the street that way, why did you step in it?
 A. I didn't know the hole was still there. I know that there was a hole there and I didn't know that the hole was there or I wouldn't have stepped in it, I don't believe.
 According to the city, Stein's reply amounted to an admission that she knew about the hole, but temporarily forgot about it. The city then cites Raflo v. Losantiville Country Club (1973), 34 Ohio St.2d 1, 3, for the proposition that a "plaintiff's failure to avoid a known peril is not excused by the fact that he `did not think,' or `forgot.'"
Pursuant to Civ.R. 56, we are required to construe the evidence in favor of the party opposing summary judgment. Doing so, we cannot agree with the City of Oakwood that Stein's reply settles all questions of fact over the extent of Stein's knowledge. Neither side disputes that Stein was aware of holes in the ground at that spot, at some time in the past. However, Stein claims that a number of years had passed since she had cause to be aware of the holes. A reasonable person might consider her confusing statement — "I know that there was a hole there and I didn't know that the hole was there * * *." — as merely attempting to reiterate this position. Thus, whether Stein had actual knowledge of the hole at the time of her fall is a question about which reasonable people might reach different conclusions.
Furthermore, as years pass, some time must come when former acquaintance with a defect should no longer be charged to the plaintiff as knowledge of the defect. In Raflo, the plaintiff fell down the same step that she had used to enter the defendant's premises. 34 Ohio St.2d at 2. The time that elapsed between her entry onto the premises and her unfortunate exit was approximately three hours. Id. The Supreme Court explained that the basis of an owner-occupier's liability for unsafe conditions is his superior knowledge of the existing dangers or perils on the premises. Id. at 3-4. Where the plaintiff has knowledge of the defect, the reason for imposing liability dissipates. The court concluded that the three-hour lapse in time was not sufficient to prevent charging the plaintiff with knowledge of the step. Id. at 3. We think it unlikely, however, that the Supreme Court would have reached the same result if the lapse occurred over a period of years. Moreover, Stein's expressed assumption that the holes in the ground had probably been filled, by erosion or by city workers, was not so unreasonable that a jury could not consider it as offsetting any knowledge that she may have had. Consequently, we find that an issue of fact did exist over whether Stein had actual knowledge of the hole she stepped in on the day in question.
The trial court's decision, however, was grounded, less on Stein's actual knowledge of the hole that she stepped into, than on her knowledge of the rugged conditions of the ground in the median. If Stein did not know that a hole from the previous decade was still in existence, she at least knew from experience that such a hole might exist. Stein also knew from experience that, when holes developed in the median, the city did not immediately fill them in.
The owner of a premises is not an insurer for the safety of visitors who come upon his land. See Perry v. Eastgreen RealtyCo. (1978), 53 Ohio St.2d 51, 52. Likewise, a municipal corporation does not insure against all accidents upon the streets, sidewalks, or public grounds that it has a duty to maintain. See Ruwe v. Board of Twp. Trustees of Springfield Twp. (1987), 29 Ohio St.3d 59, 61. "It is only where it is shown that the owner had superior knowledge of the particular danger which caused the injury that liability attaches, because in such a case the invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." LaCourse v. Fleitz (1986),28 Ohio St.3d 209, 210. Thus, when a person has knowledge of ground conditions that might cause her injury, that person is charged with her own safety for any injuries resulting from such conditions. A premises owner or occupier will not be held liable for such injuries even if the injured person lacked actual knowledge of the particular defect that caused her injury. SeeKrone v. McCann (1982), 196 Mont. 260, 638 P.2d 397, 400 ("Since [plaintiff] knew of the general condition of the ground, no duty rests on the defendant to warn her of it."); see also 66 American Jurisprudence 2d (1990) 215, Premises Liability, Section 653 (citing Krone).
In Brinkman v. Ross (1993), 68 Ohio St.3d 82, 83, the Supreme Court of Ohio held that a premises owner was not responsible for a slip-and-fall injury caused by natural accumulation of ice and snow. Id. at 83. The Court applied this rule even though new snow concealed a layer of ice that had developed from the owner's long failure to clear the walkway. Id. at 82. In Brinkman, the plaintiff's knowledge of the general condition was sufficient to warrant summary judgment although the particular danger was hidden. See Id. at 84. Here, similarly, Stein had knowledge of conditions that should have caused her to recognize that the median ground was potentially hazardous. The fact that the hole she stepped into was obscured by grass does not obviate her general knowledge of the ground conditions. Because Stein had such knowledge, absent evidence that the city had superior knowledge of the danger, the city could not be found negligent. Thus, there was no nuisance-in-fact and the city could not be held liable.
The trial court recognized additional grounds supporting summary judgment when it noted that "any person walking in grass can expect `ruts' hidden in the grass." In so reasoning, the trial court relied extensively on our decision in Young v. Local775 Housing Association (May 30, 1997), Montgomery App. No. 16226, unreported. In Young, this court affirmed a grant of summary judgment against a plaintiff who fell when she stepped into a hole or depression in a grassy area. The plaintiff in Young had stepped off a walkway into the grass to allow an acquaintance to pass her. Doing so, she stepped into a hole that was immediately adjacent to the walkway and, thereby, injured herself. Id. at 2. This court reasoned that such a hole was "the kind of ordinary hazard one would expect to find when stepping from a paved surface to adjacent ground." Id. at 20. We then held that "[w]here * * * a plaintiff voluntarily and without need steps into danger and is injured by what appears to be an ordinary hazard, the presence of which she could have fully anticipated, summary judgment for the owner or occupier is the appropriate resolution."
We too find that Young is apposite to the case at hand. Like the plaintiff in Young, Stein chose to leave the usual paths of pedestrian traffic and step onto an area of natural ground. While crossing, she encountered a defect. On natural ground, such defects are to be expected. In Young we quoted the following passage, which we again find relevant.
 People can hurt themselves on almost any condition of the premises. * * * If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stones and slopes in a New England field, and countless other things which are common in our everyday experience. It may also be true of less common and obvious conditions which lurk in places where visitors would expect to find such dangers.
 Id. at 20-21 (quoting Baldauf v. Kent State University (1988), 49 Ohio App.3d 46, 49
(quoting 2 Harper James, Law of Torts (1974) 1489-1491, Section 27.13)).
Ohio's reluctance to hold premises owners liable for natural accumulations of snow and ice has long been based on the premise that individuals should expect to encounter a certain amount of danger when snowy conditions are evident. In Debie v. CochranPharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38, paragraph one of syllabus, the Supreme Court held that a premises owner could not be held liable unless it was shown that he had notice of "a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area." Because a plaintiff should have knowledge of the "usual dangers" resulting from snow and ice, the premises owner will not be held liable for injuries caused by such dangers. Mikula v. Tailors (1970), 24 Ohio St.2d 48,56. We think that the same logic applies to the inherent and usual dangers of natural ground. As we found in Young, a person must be charged with her own safety to avoid the common dips, ruts, and holes that occur on unpaved land.
Appellants contend that this analysis is inappropriate, because, they claim, the hole causing Stein's injury was no ordinary rut. Appellants argue that the hole was evidently dangerous because it caused Stein to break her ankle. However, as we noted in Young, "People can hurt themselves on almost any condition of the premises." Young, supra, at 20. If injury alone could prove unreasonable danger, premises owners would become the insurers of their visitors.
Appellants also note that the hole was 6-8 inches deep. Such a depth, we recognize, cannot be dismissed as trivial. Nevertheless, natural ground is not pavement. The principle that our opinion in Young represents is that some degree of defect in natural ground will not give rise to liability, because the defect is so much to be expected. Certainly, some ground defects could exist that pose such risk that no reasonable person should expect to encounter them. A premises owner would bear liability for the injuries such defects cause. Other defects, however, are so likely to occur that no duty should exist to remove them and, regarding them, no premises owner should be expected to bear even the burden of going to trial. See Brinkman, 68 Ohio St.3d at 85.
Even with pavement, Ohio courts have recognized that "a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel." Cash v. City ofCincinnati (1981), 66 Ohio St.2d 319, 323. That logic applies with much greater force when natural ground is involved because ground is so much more subject to the actions of the elements or of other natural forces, and so much less susceptible to any human attempt at engineering perfection. Given the circumstances of the median ground involved in this case, we conclude that a hole of the depth encountered by Mrs. Stein was not extraordinary or outside expectations. It was, therefore, not unreasonably dangerous. No reasonable fact-finder could determine, then, that the city was negligent in not repairing the hole.
Because we see no genuine issues of fact regarding the city's negligence, we find that the hole did not constitute a nuisance under R.C. 723.01 and 2744.02(B)(3) and that the city was entitled to have summary judgment rendered in its favor. Consequently, we overrule appellant's first assignment of error.
 III.
Appellants assert as their second assignment of error the following:
 The trial court erred in granting summary judgment in Appellee's favor, because reasonable minds can differ as to whether Appellant failed to exercise due care for her own safety.
 In granting summary judgment to Oakwood, the trial court found that Stein failed to exercise due care in crossing the median. This finding provided alternative grounds for the trial court's grant of summary judgment. Because we have already found that summary judgment was appropriate, this assignment of error is moot.
The judgment of the trial court is affirmed.
FAIN, J., concurs.
GRADY, J., concurs in judgment only.
Copies mailed to:
Lee C. Falke
Neil F. Freund
Hon. Barbara P. Gorman
[1] R.C. 2744.02(B)(3) was substantially rewritten, effective January 27, 1997, and no longer refers to "public grounds." The revised provision also no longer bases liability on a theory of nuisance. We do not decide today how these changes have affected potential liability for municipalities.
[2] This statute has also been substantially revised, and, for cases arising after January 27, 1997, R.C. 723.01 no longer provides an independent source of liability. It states that liability for any breach of the duties that it imposes are governed by R.C. 2744.02.