FILED

05/20/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0525

DA 24-0525

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 108N

MARLENE STALOWY,

 Plaintiff and Appellant,

 v.

MISSOULA MANOR HOME,

 Defendant and Appellee.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-23-0356
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

 James Jackson, Lowe Law Group, Ogden, Utah

 For Appellee:

 Calvin J. Stacey, Morgan M. Sorena, Stacey & Funyak, Billings,
Montana

Submitted on Briefs: March 19, 2025

Decided: May 20, 2025

Filed:

_____
    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Marlene Stalowy appeals the Fourth Judicial District Court's order granting summary judgment to Missoula Manor Home. Finding disputes of material fact in the summary judgment record, we reverse and remand.

¶3     Stalowy is a resident of Missoula Manor, a senior living facility. On December 25, 2022, at around 5 or 5:30 PM, Stalowy exited through a side entrance, slipped near a "slippery when wet" sign, fell, and seriously injured her ankle. Stalowy brought a premises liability and negligence action against Missoula Manor for the injuries sustained. Her second amended complaint alleged that Missoula Manor was aware of the accumulation of ice outside the entrance but failed to take sufficient steps to prevent ice accumulation or adequately warn Stalowy. After discovery, Missoula Manor moved for summary judgment. It argued that there was no genuine dispute of material fact regarding breach and causation and that Stalowy's claim of ice causing her to slip was speculative. Stalowy opposed. The District Court agreed with Missoula Manor that Stalowy's claims were not supported. Citing Stalowy's admission in her deposition that she does not know why she fell and other witnesses' similar lack of knowledge, the court concluded that the record

contained only speculative testimony of breach and causation, and thus there was no genuine issue of material fact.

¶4    This Court reviews summary judgment appeals de novo, applying the standard in M. R. Civ. P. 56. *Barrett, Inc. v. City of Red Lodge*, 2020 MT 26, ¶ 6, 398 Mont. 436, 457 P.3d 233. "[T]he district court should grant summary judgment if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Alfson v. Allstate Prop. & Cas. Ins. Co.*, 2013 MT 326, ¶ 9, 372 Mont. 363, 313 P.3d 107 (citing M. R. Civ. P. 56(c)[3]). "Once the moving party meets this burden, the nonmoving party must present material and substantial evidence to raise a genuine issue of material fact." *B.Y.O.B., Inc. v. State*, 2021 MT 191, ¶ 12, 405 Mont. 88, 493 P.3d 318. A fact is material if it involves the elements of a cause of action. *Corp. Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111.

¶5    "A negligence action requires proof of four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4) damages." *Abraham v. Nelson*, 2002 MT 94, ¶ 11, 309 Mont. 366, 46 P.3d 628 (citing *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, ¶ 24, 290 Mont. 126, 962 P.2d 1205).

> The possessor of the premises has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers. What constitutes a reasonably safe premises is generally considered to be a question of fact. Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics; the type of person who would foreseeably visit, use or occupy the premises; and the specific type of hazard or unsafe condition alleged. The possessor of the premises is not liable to

3

persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 321, 950 P.2d 748, 755-56 (1997).

¶6     Summary judgment in favor of the defendant is proper if "the plaintiff fails to offer proof of one of these elements[.]" *Abraham*, ¶ 11 (citing *Gentry*, ¶ 24). "We draw all reasonable inferences from the evidence offered in favor of the party opposing summary judgment; but conclusory statements, speculative assertions, and mere denials are insufficient to defeat a motion for summary judgment." *B.Y.O.B., Inc.*, ¶ 12 (citation and internal quotations omitted). "A suspicion, regardless of how particularized it may be, is not sufficient to sustain an action or to defeat a motion for summary judgment. Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. The trial court has no duty to anticipate possible proof." *Gentry*, ¶ 32 (citation omitted).

¶7     Stalowy contends that the District Court erred because it failed to afford her reasonable inferences, and the record evidence is not "conclusory" or "speculative" but supports her claim that she fell on ice. She argues that the District Court overlooked her own testimony that the ground was slippery and disregarded testimony from other witnesses that supports a reasonable inference that she fell on ice.

¶8     Missoula Manor responds that Stalowy's claim is based on assumptions and speculation. It highlights that Stalowy testified she did not see any ice on the ground and

4

does not know why she fell, just that she believes she slipped in slippery conditions. It further contends that no other witness observed when, where, or how Stalowy fell, and their testimony is also speculative.

¶9   Deposition testimony attached to the briefs established that there are at least two entrances on the north side of the building, a front main entrance and a side entrance.[1] Residents use the side entrance to walk down to a smoking area gazebo. During her deposition, Stalowy stated that there was nothing on the ground but "[i]f there was ice, it had to be black ice"; that she saw a sign that read, "caution wet floor"; that she slipped despite proceeding with caution and being a good walker; and that she did not see ice or snow on the ground. When asked how she knew that it was ice, she responded that she did not know but that it was slippery when she tried to get up and when she tried to scoot to the garbage can. She acknowledged that she had never been able to confirm it was ice on the day that she slipped. She also testified that she has walked to the gazebo multiple times a day for years.

¶10   Billy Lundstrom, a Missoula Manor maintenance tech, testified that runoff from the roof would cause slick spots, including where he understood that Stalowy fell. He testified that he was the only maintenance person working on December 25, he salted prior to clocking out around 3 or 3:30 PM, and he had been instructed previously not to use too much salt because it cut into the maintenance budget. Dale Gramm, Missoula Manor's maintenance supervisor, testified that he had never told Lundstrom not to use too much salt

---

[1] The parties and witnesses use different descriptors in their briefs and depositions to refer to these entrances. For ease, we will use the same reference names throughout this Opinion.

but rather instructed him to shovel *prior* to salting. He had done maintenance at the Manor for 13 years, and in his experience, the area where Stalowy fell does not have an issue with ice accumulation.

¶11 Missoula Manor resident Linda Balazic testified that she was by the main front entrance when Stalowy fell. She did not see Stalowy fall but heard Stalowy ask for an ambulance. She stated that she went back into the building and exited the side entrance so that she wouldn't fall on the ice, and she "tried to go out on the ice, but [she] couldn't reach [Stalowy], so [she] just stood and called 911." She testified that she knew it was ice because she had slipped on ice by the side entrance door at around 4 PM earlier in the day and remembered water dripping off the awning above the door. Balazic informed clerical assistant Valerie McNair, who responded that maintenance had left for the day but placed a "slippery when wet" sign near the "side entrance door." Balazic testified that she did not see ice on the ground when she slipped but that "[i]t was ice." She testified that when she was leaving the building later in the day (before she heard Stalowy call for help), she thought the side entrance would still be slippery from her fall earlier, so she went out the front main entrance. She admitted that she did not see Stalowy fall and knows only where she found her.

¶12 McNair acknowledged that residents told her the weather was bad, cold, and slick on the day of the accident, and she did not put any ice salt down. When she left for the day, she exited through the main front entrance. She stated that it was too slick to walk from the main entrance to the vehicle that gave her a ride home, and she had to hold a rail

6

the whole way to the car. She testified that the freezing rain was turning "into a sheet of ice", melting the salt, and covering the salt with ice. She was not aware that Stalowy had fallen but saw an ambulance arriving as she left. She could not walk over to see what was going on because, she testified, "[i]t was too icy. I couldn't walk."

¶13 "Ordinarily, the determination of whether a defendant breached a legal duty owed is a fact question for the jury, and therefore not susceptible to summary judgment, unless the evidence is undisputed or susceptible to only one conclusion by reasonable people." *Bonilla v. Univ. of Mont.*, 2005 MT 183, ¶ 17, 328 Mont. 41, 116 P.3d 823. Questions of causation should not be adjudicated as a matter of law "[u]nless the record reveals a lack of factual issues from which reasonable minds could reach but one conclusion as to the cause of an accident[.]" *Norris v. Olsen*, 2024 MT 123, ¶ 21, 417 Mont. 14, 550 P.3d 323 (citation and internal quotations omitted). We have upheld summary judgment, however, when the undisputed facts could support only one conclusion, or the plaintiff offered only speculation regarding causation. *E.g.*, *Krone v. McCann*, 196 Mont. 260, 266, 638 P.2d 397, 400-01 (1982) (*overruled in part on other grounds by Richardson*, 286 Mont. at 322, 950 P.2d at 756) (though plaintiff sustained injuries while walking on a property, it was "undisputed" that plaintiff could not "describe what caused her injury" and did "not know if it was merely a mound of dirt or an old corral pole"); *Gentry*, ¶¶ 27, 34 (A man's rifle discharged as he approached a house's steps and stumbled; because plaintiff could offer only speculative statements and no substantial evidence that a condition on the property caused the man to fall immediately before his rifle discharged, the plaintiff could not

7

establish that the property's unsafe and dangerous conditions caused decedent's injuries.); *Abraham*, ¶¶ 5, 26-28 (concluding that plaintiff whose townhome flooded could provide only speculative evidence regarding causation because she could not present any evidence regarding when the water damage occurred, what caused the water damage, or link any negligence by the defendant to the damage).

¶14 In this case, the deposition evidence shows that Lundstrom—the only maintenance man that day—left around 3 or 3:30 PM; that Balazic slipped around 4 PM near the same entrance where Stalowy fell; that after being told by Balazic that she slipped, McNair put a sign out but did not put ice salt down; and that Stalowy fell around 5:30 PM. The summary judgment record contains sufficient evidence upon which more than one conclusion could be reached by a reasonable trier of fact whether Missoula Manor breached its legal duty. *Bonilla*, ¶ 17. Drawing all reasonable inferences in favor of Stalowy, *B.Y.O.B., Inc.*, ¶ 12, we conclude that whether Missoula Manor's actions fell below the standard of care (when evaluating the salt use and sign placement) is a question for the jury. *Bonilla*, ¶ 17. The conflicting testimony between Lundstrom and Gramm regarding the use of salt on the premises also presents a question within the factfinder's province. "[W]eighing the evidence is . . . a classic jury function and we are reluctant to remove that function from the jury's purview." *Andrews v. Plum Creek Mfg., LP.*, 2001 MT 94, ¶ 21, 305 Mont. 194, 27 P.3d 426 (citation and internal quotations omitted).

¶15 Although Stalowy testified that she did not know ice was on the ground or see any, she drew an inference that it was ice because it was slippery when she tried to get up and

8

move over to a garbage can. Stalowy also provided evidence from other witnesses that corroborated her deposition testimony. *Compare Abraham,* ¶ 15; *Gentry*, ¶ 34. We are not convinced, as Missoula Manor asserts, that there was "no evidence regarding the condition of the ground at the side entrance at the time of Stalowy's fall."[2] Balazic slipped on ice near the same door as Stalowy about an hour and a half prior. When Balazic heard Stalowy calling for help, she had to re-enter and re-exit the building instead of walking directly to Stalowy so that she would not fall on the ice; upon exiting the side entrance, she "tried to go out on the ice" but could not reach Stalowy so called 911. While it is unclear from the summary judgment record how far apart the doors are, they are at least close enough that Balazic could hear Stalowy calling for help when Stalowy was at the side entrance and Balazic was at the front entrance. McNair testified that the ground was turning into a sheet of ice; that she had to hold onto a rail when leaving the building for her car; that she did not feel salt beneath her shoes; and that she did not return to the ambulance because she could not reach it.

¶16 Missoula Manor's argument that McNair left out the front entrance (and thus cannot testify to the conditions where Stalowy fell) or that Balazic could not testify to the condition exactly when and where Stalowy fell overlooks reasonable inferences that could be drawn

---

[2] Missoula Manor also generally asserts a lack of admissible evidence from Stalowy but fails to develop why certain evidence is admissible or inadmissible. "[O]nly admissible evidence can be considered in determining whether genuine issues of material fact exist." *Carelli v. Hall*, 279 Mont. 202, 207, 926 P.2d 756, 760 (1996). But we cannot address this argument properly without knowing the specific evidence to which Missoula Manor objects and the legal basis for its objections.

from their testimony regarding the general icy conditions outside the entrances of Missoula Manor. *B.Y.O.B. Inc.*, ¶ 12. Their statements are not speculative because they relate to the witnesses' own personal knowledge and experience that evening regarding the weather conditions. Here, in contrast to cases in which we have upheld summary judgment because a plaintiff's case was based on speculation, there are various witnesses whose testimony supports Stalowy's perception of the ground conditions when she fell. *Compare Abraham*, ¶ 15 (reasoning that "Abraham provided no evidence to supplement her deposition testimony that she did not know the actual cause of the flooding in her basement or the exact date that it may have occurred"); *Gentry*, ¶ 34 (plaintiff "offered no substantial evidence that any condition on the property . . . caused Bacon to stumble and fall immediately before his rifle discharged"); *Krone*, 196 Mont. at 266; 638 P.2d at 401.

¶17 Whether Stalowy's evidence is sufficient to prove breach of duty and causation, it is sufficient at least to present a factual question for a jury that we "may not adjudicate" on summary judgment. *Andrews*, ¶ 21. Our role is not to assess the strength of the case but instead to draw all reasonable inferences in the light most favorable to the nonmoving party. *See Norris*, ¶ 25. The weaknesses in witness testimony that Missoula Manor highlights are arguments for the jury, *Andrews*, ¶ 21, but do not mean that only "one conclusion" reasonably could be reached as to the cause of Stalowy's fall. *Norris*, ¶ 21. Construing all inferences in the light most favorable to Stalowy, we conclude that she presented sufficient evidence, beyond speculative statements, to create a question of fact whether Missoula Manor breached its duty and icy conditions caused her fall.

¶18   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.  The District Court's summary judgment order is reversed, and the case is remanded for further proceedings.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON