**In re Wayne A. REAUD.**

No. 09–09–00150–CV.

Court of Appeals of Texas, Beaumont.

Submitted on May 7, 2009.

Decided May 15, 2009.

## OPINION

### PER CURIAM.

This mandamus proceeding involves a discovery dispute about whether the relator, a nonparty witness who is one of the corporation's directors, can be ordered by the trial court to attend a deposition based on a notice served on the corporation's trial counsel. After reviewing the record, we find no evidence to support the trial court's implied finding that the director was subject to the corporation's control. Consequently, a subpoena is required to compel his appearance for a deposition. Because no subpoena for this nonparty witness was issued, we conclude the trial court was without authority to order the director to appear for a deposition based on a notice alone. We conditionally grant the relator's request that he should be protected from attending the deposition based on the notice, and we direct the trial court to vacate its March 30, 2009, order and replace it with an order sustaining the relator's objection to the notice that requested his presence at the deposition.

### Procedural History

Huntsman Corporation (Huntsman) is a large global manufacturer and marketer of differentiated chemical products and inorganic chemical products. Following its attempted merger with Hexion Specialty Chemicals, Inc., Huntsman filed suit against Credit Suisse Securities (USA) LLC and Deutsche Bank Securities, Inc. (referred to collectively as the "Bank"), in Montgomery County, Texas. In its petition, Huntsman alleged that the Bank conspired to interfere with a merger agreement between Huntsman and Bassell AF (an affiliate of Access Industries), and that the Bank also interfered with a subsequent merger agreement between Huntsman and Hexion Specialty Chemicals, Inc. As part of its discovery in the lawsuit, the Bank

Michael J. Truncale, Orgain, Bell & Tucker, LLP, Beaumont, TX, Michael E. Tigar, Pittsboro, N.C., Stephen E. McConnico, Sam Johnson, Jane M.N. Webre, Scott, Douglass & McConnico, L.L.P., Austin, TX, for relator.

Richard W. Clary, Robert H. Baron, Julie A. North, Gary A. Bornstein, Cravath, Swaine & Moore LLP, New York, NY, Ray A. Burgess, Hope & Causey, P.C., Conroe, G. Irvin Terrell, David D. Sterling, Stephen G. Tipps, Danny David, Karlene Poll, Amy Pharr Hefley, Baker Botts L.L.P., Houston, TX, for real party in interest.

Before MCKEITHEN, C.J., KREGER and HORTON, JJ.

filed an amended notice of oral and video-taped deposition of Wayne A. Reaud,[1] one of Huntsman's outside directors, and served the notice on Huntsman's counsel "by reason of the provisions of Texas Rule of Civil Procedure 199.3." Huntsman advised the Bank's attorneys that Reaud, "had retained separate counsel to represent him in connection with this case and that the [Bank] should deal directly with Mr. Reaud's counsel to schedule the deposition." When the Bank's counsel did so, Reaud's attorneys advised them that Reaud "is not 'subject to the control of' Huntsman within the meaning of Texas Rule of Civil Procedure 199.3 and, therefore, must be served with a subpoena in Beaumont if the Defendants wish to compel his appearance."

The Bank then filed a motion to compel the deposition, arguing that "[a]s one of Huntsman's directors, Mr. Reaud is 'subject to the control of' Huntsman and thus obligated to appear for his deposition without the necessity of a subpoena." Reaud filed a motion for protection from the deposition, and, among other arguments, asserted that he was not controlled by Huntsman. Reaud's affidavit, which accompanied his motion, states in part:

> 4. I am an outside and independent director of Huntsman Corporation. As an outside and independent director, I am not 'subject to the control' of Huntsman Corporation. As I understand it, I was brought in as an independent director because of my independence from the corporation. It is my understanding that as an independent director, I have a fiduciary duty to Huntsman Corporation to exercise my independent judgment. If I had thought that as an outside independent director I could be sum-

moned to any forum in which this company was engaged in litigation, I would not have accepted this responsibility.

Huntsman filed a response to the motion to compel in which it asserted that Reaud was an outside director and also an attorney, and further asserted that Reaud is the current chairman of its Litigation Committee, which "oversees all aspects of the prosecution of Huntsman's claims in this case." Huntsman asserted that "Mr. Reaud's legal advice to Huntsman is plainly privileged by the attorney-client privilege and the work product doctrine, as are his communications with other senior Huntsman officers for the purpose of facilitating the rendition of legal advice to the company."

The Bank then filed a response to Reaud's motion for protection and included evidence that Reaud was a director who had special and unique knowledge of the mergers involved in the current lawsuit. The Bank's evidence further showed that Huntsman compensated Reaud with cash, stock, stock options and bonuses for serving as a director. Included in the Bank's response was evidence that Huntsman had produced two of its outside directors, not including Reaud, in response to deposition notices issued in Hexion's Delaware suit against Huntsman over the proposed merger. The Bank's response further contained evidence that in this case, Huntsman had produced another one of its outside directors by agreement when the Bank requested that director's deposition, and had issued hold notices to its directors in connection with this case. The Bank's response argues that all of this evidence showed that Reaud is "subject to Huntsman's control."

---

1. Reaud is an attorney licensed to practice law in Texas, founder of the law firm now named Reaud, Morgan & Quinn, and one of the attorneys that represented the State of Texas in its litigation against the tobacco industry.

On March 27, 2009, the trial court conducted a hearing on Reaud's request for a protective order. The parties presented no additional evidence at the hearing, and the trial court did not enter written findings. At the end of the hearing, however, the trial court announced that it would not require the Bank to serve Reaud with a subpoena and then immediately explained: "He's a director."

## Analysis

### The Rules of Procedure in Issue

The dispute before us directly involves two of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 199.3, 205.1. Rule 199.3 provides:

> 199.3. Compelling Witness to Attend
>
> A party may compel the witness to attend the oral deposition by serving the witness with a subpoena under Rule 176. If the witness is a party or is retained by, employed by, or otherwise subject to the control of a party, however, service of the notice of oral deposition upon the party's attorney has the same effect as a subpoena served on the witness.

Rule 205.1 provides in pertinent part:

> 205.1. Forms of Discovery; Subpoena Requirement
>
> A party may compel discovery from a nonparty-that is, a person who is not a party or subject to a party's control-only by obtaining a court order under Rules 196.7, 202, or 204, or by serving a subpoena compelling:
>
> (a) an oral deposition[.]

### Burden of Proving Control

■ As is obvious under the Texas Rules of Civil Procedure, a party may be compelled to present a nonparty witness who is subject to its control. To determine if the trial court erred, we first address which party possessed the burden of proving to the trial court that Reaud was subject to Huntsman's control. Rules 199.3 and 205.1 do not expressly provide a procedure for resolving a dispute over control. *See id.*

In this case, Reaud, Huntsman's director, responded to the motion to compel by filing a motion for protection to which he attached his affidavit. His affidavit contained his sworn statement that he was not "subject to the control" of Huntsman, and Reaud further asserted that he did not have "any unique or superior knowledge of the underlying transactions that give rise to this lawsuit." At the hearing on the motions, the trial court first heard the argument from the Bank's attorneys.

Based on the record, it is clear the parties were attempting to follow the procedure concerning apex depositions as outlined by the Texas Supreme Court. *See In re Alcatel USA, Inc.*, 11 S.W.3d 173, 175 (Tex.2000) (orig.proceeding) (suggesting that the high-level corporate official file a motion for protection with an affidavit denying knowledge of relevant facts); *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex.1995). Thus, it appears the parties assumed that, in light of Reaud's affidavit that he possessed no unique or superior knowledge relevant to the litigation, the Bank had the burden of proving to the trial court that Reaud was subject to Huntsman's control.

With respect to nonparty witnesses generally, it is not apparent to us that the burden-shifting procedure applicable to apex depositions is necessarily required to resolve the separate issue of whether a nonparty witness is subject to a party's control. We expressly do not resolve where the Rules of Civil Procedure generally place the burden of proving control because the parties proceeded without objection in the trial court and neither ar-

gues in this proceeding that the burden was misplaced. Since the parties in this case followed the apex deposition procedure, and since Reaud's affidavit under that procedure served to shift Reaud's burden, if he had one, to the Bank, we hold that for purposes of this mandamus proceeding the Bank bore the burden on the question of control at the time of the hearing in the trial court.

### Control Over Directors

 Under Texas law, a director is a person who is or was a director of the corporation. *See* TEX. BUS. CORP. ACT ANN. art. 2.02–1(A)(2) (Vernon Supp.2008).[2] The corporation's board of directors directs the management of the corporation's affairs. *Id.* art. 2.31 (Vernon 2003). Thus, generally, the directors by law manage the corporation, not *vice versa.*

---

**2.** Based on the enabling language of the Business Organizations Act, that Act rather than the Business Corporations Act might apply to Huntsman, but the record before us does not show whether Huntsman filed any documents with the Secretary of the State of Texas to have made it applicable. *See* TEX. BUS. ORGS. CODE ANN. § 402.004–.005(a) (making January 1, 2010, the effective date of the Texas Business Organizations Code to foreign corporations registered in Texas unless they have made voluntary elections at an earlier date to become subject to the Business Organizations Code.) Further, Delaware law does not apply as neither the Bank nor Huntsman filed a motion to request its application. *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 720 (Tex.App.-Dallas 2004, no pet.) (citing *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex.App.-Corpus Christi 1999, pet. denied)) ("[A] preliminary motion must be filed asking the court to apply another state's laws."); *see also* TEX R. EVID. 202 ("A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States.").

Rules 199.3 and 205.1 expressly mention three categories of nonparties who may be required to attend depositions without being subpoenaed, the first two of which are specific while the last category, constituting those persons subject to another's control, is very general. The first category is a party's employees. The rules require the employer to produce its nonparty employees at depositions when the employer's attorney of record receives a notice of the deposition. *See* TEX.R. CIV. P. 199.3, 205.1; *see also* TEX.R. CIV. P. 21a. Although the rationale is not expressed in the rules, we assume the employee-nonparty-witness is required to appear because his employer has the ability to establish his terms of employment, to fire him, to control his pay, and to decide whether he receives a future promotion or demotion.

The second category refers to retained experts,[3] a category of nonparties required

While Reaud included copies of the Final New York Stock Exchange Corporate Governance Rules in an exhibit to his motion, he used them to argue that he was not controlled by Huntsman as a matter of evidence, and does not appear to have claimed that they provided the substantive statutory framework under which he had been elected to serve as a director. Absent a motion by a party, Texas law may be applied to a dispute. *See Johnson*, 148 S.W.3d at 720.

In the absence of a request for a court to take judicial notice or proper proof that another state's law applies, Texas courts presume that the law of the other state is identical to Texas law. *See id.* Finally, in the Petition for Mandamus and Response, no party argues that Delaware law applies. Thus, in the absence of properly developed evidence on Delaware law, and although we believe that Delaware statutes likely provide the statutory framework that would be applicable to a Delaware corporation such as Huntsman, for purposes of this proceeding we presume that Texas law concerning corporate directors is identical to that of Delaware. *See id.*

**3.** The current Rules of Civil Procedure that concern discovery became effective January 1, 1999, and reflect significant effort to define

by Rule 199.3 to be produced on notice. Retained experts are also subject to being "controlled" by the attorney for the party who, along with his client, has the power to terminate the relationship in the event the expert failed to comply with the attorney's instruction to appear for deposition. The rules also require the party who retained the expert to pay his fees for attending depositions. TEX.R. CIV. P. 195.7.

■ The third category of nonparty witnesses are those who are "otherwise subject to the control of a party[.]" TEX.R. CIV. P. 199.3. The term, "otherwise controlled," is not defined by the procedural rules. In this instance we think the doctrine of *ejusdem generis* applies to restrict the potentially broad meaning of "otherwise controlled" as used in Rules 199.3 and 205.1. *Ejusdem generis* means that " 'when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation.' " *State v. Fidelity & Deposit Co. of Md.*, 223 S.W.3d 309, 312 (Tex.2007) (quoting *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex.2003)). In other words, *ejusdem generis* limits the undefined, general term "otherwise controlled" as used in Rules 199.3 and 205.1 to include only control of the same kind, class, or nature as the types of control parties would have over employees or retained experts. A related rule of construction, *noscitur a sociis* ("a word is known by the company it keeps"), compels the same conclusion. *See U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex.2008); *see also Fiess v. State Farm Lloyds*, 202

S.W.3d 744, 750–751 (Tex.2006). While the current rules contain language that allow them to reach beyond retained experts and employees, it is now clear that these two rules do not extend to nonparties over whom the party does not have the type of control as it has over an employee or a retained expert.

■ We also do not find evidence in the Texas statutes governing corporate structure proving, with respect to the corporation's power to require the director to attend a deposition, that Texas corporations have the necessary control to make the director appear. The Business Corporations Act describes the conditions for "terminating" a director. "Absent resignation or removal in accordance with provisions of the bylaws or the articles of incorporation, each director shall hold office for the term for which he is elected and until his successor shall have been elected and qualified." TEX. BUS. CORP. ACT ANN. art. 2.32(B) (Vernon Supp.2008). Unless otherwise provided by the Business Corporation Act, the corporation's articles of incorporation, or bylaws, a director may be removed by the shareholders. *Id.* art. 2.32(C). Thus, generally, a director is subject to removal by the shareholders of the corporation, not the corporation's officers.

Further, we find no statute addressing the removal of a Texas director for his failure to attend a deposition. Thus, the issue of whether Huntsman could control Reaud by causing his removal as a board member depends on whether its bylaws or articles of incorporation provide it such a right. But, the parties did not submit either Huntsman's bylaws or its articles of

a party's discovery obligation as to retained expert witnesses. *See* TEX.R. CIV. P. 194.2(f)(3) (concerning differences between disclosure obligations for retained and nonretained experts); *id.* 195.3(A) (concerning when a re-

tained expert is required to be produced for deposition); *id.* 195.7 (requiring the party retaining the expert to pay his reasonable fees for depositions).

incorporation in their motions filed in the trial court.

We also find nothing in the evidence before the trial court, in Texas statutes, or in Texas caselaw that tends to show Huntsman could alter or reduce Reaud's director's fees for a refusal to attend a noticed deposition. As one treatise explained:

> Many large public corporations now pay their directors an honorarium for attending meetings. Others pay fairly substantial sums to outside persons to serve as directors. The latter practice recognizes that, since modern directors of publicly held corporation often have insignificant shareholdings, direct compensation may be the best way to provide remuneration for the important function that directors perform.

20 A ROBERT W. HAMILTON, TEXAS PRACTICE: BUSINESS ORGANIZATIONS § 35.4 (2d ed.2004) (footnote omitted). This treatise also points out that "[t]he Texas Business Corporation Act is silent as to whether directors are entitled to compensation for their services, and there appears to be no Texas case that has squarely considered the question." *Id.* (footnote omitted). We assume that the matter of compensation of directors is addressed in Huntsman's articles of incorporation or bylaws; however, as discussed above, these were not before the court. Given the Bank's burden on the control issue, we find that there is no evidence that shows Reaud could be controlled by any power possessed by Huntsman over his fees.

The Bank's evidence at the hearing also did not address whether Reaud could be promoted or demoted by his removal from any committees of the board based on his refusal to comply with the deposition notice served on Huntsman's attorney. Article 2.36 of the Texas Business Corporation Act allows the board to designate certain directors to serve on committees, but only "[i]f the articles of incorporation or bylaws so provide." TEX. BUS. CORP. ACT ANN. art. 2.36(A) (Vernon Supp.2008). Because the articles and bylaws are not in the record, and because no witness testified that Reaud could be reassigned, we do not know whether provisions in Huntsman's bylaws or in its articles would allow Reaud's removal from a committee of the board under these circumstances. Nevertheless, we note that no committee of the board of directors has authority to fix the compensation of any member of the board. TEX. BUS. CORP. ACT ANN. art. 2.36(B)(11) (Vernon Supp.2008). Thus, it appears that the board of directors as a body must act on fees paid to its directors, and that the rules governing the board's authority to alter these fees, if any, would be found in the bylaws or articles of incorporation that were not before the trial court. Even if the body could act to alter a board member's director's fees, however, the members of the board are elected by the shareholders.

■■■ As applied to Reaud, there is no evidence that Reaud was subject to termination, discipline, or a reduction in his fees as a director based upon his refusal to attend the deposition under the circumstances of a notice without an accompanying subpoena. In reaching our conclusion on this issue, we wish to make clear that we do not disagree with the trial court's implied finding that Reaud had unique or superior knowledge of relevant facts. In addition, we do not imply that Reaud is not subject to subpoena for deposition on nonprivileged matters. Under the record before us, which does not contain the corporation's articles or bylaws, and based on the Texas statutes relevant to corporate governance, we hold that there is no evidence in the record to support the trial court's implied finding that Huntsman

could control Reaud's appearance at a deposition as a person subject to the control of a party.

The Bank contends, however, that Reaud's status as a director makes him subject to the requirement that he appear for deposition by notice served on Huntsman's attorneys. In its argument, it relies on language contained in Rule 199.3 that a notice has the same effect as a subpoena if the nonparty witness is retained by, employed by, or otherwise subject to the control of a party. The sole case cited by the Bank in support of its argument on this specific issue is *Wal–Mart Stores Inc. v. Street*, 754 S.W.2d 153 (Tex.1988) (orig.proceeding) (per curiam). In *Street*, Wal–Mart sought relief through a writ of mandamus from a trial court's order that required Sam Walton, the chairman of Wal–Mart's board of directors, to give a deposition. *Id.* at 154. At that time, Rule 201(3) of the Rules of Civil Procedure provided that notice could be directed to " 'an agent or employee who is subject to the control of a party.' " *Id.* (quoting former Rule 201(3) of the Texas Rules of Civil Procedure, repealed effective January 1, 1999).[4] Without discussing the record pertinent to the issue of Wal–Mart's control over Walton, the Texas Supreme Court stated that "[o]n the present record we find no clear abuse of discretion in Judge Street's decisions that Walton is an agent of the corporation subject to its control.... " *Id.* at 154–55.

Without knowing the state of the record before the *Street* Court concerning the proof surrounding Wal–Mart's control over Walton, we cannot determine whether the case stands for the proposition asserted by the Bank that a director, by virtue of his position, is subject to the corporation's control. For example, we do not know whether the record contained Wal–Mart's corporate bylaws or articles of incorporation, Arkansas statutes relevant to the rules on corporate structure, or Arkansas statutes relevant to the duties of Arkansas directors, or whether the testimony of witnesses explained how the rules of corporate governance in Wal–Mart's case made Walton subject to Wal–Mart's control. In any event, we can glean from the sparse discussion about the record in *Street* that Walton had more of a connection to Wal–Mart than the connection shown to exist between Reaud and Huntsman. Unlike the record here, in *Street* the record showed that Walton was the president of Wal–Mart when the underlying accident occurred, but that he was not an employee when the notice was served, that Walton was Wal–Mart's Board Chairman when the notice was issued, and that he was a major shareholder. *Id.* Here, there is no evidence that Reaud was ever an officer of Huntsman or its board chairman, nor is there evidence that Reaud is a major shareholder in terms of the total shares issued by the corporation.

Most importantly, *Street* was decided under procedural rules that were repealed as of January 1, 1999, and the former rule considered in *Street* contained specific language requiring a party to produce an *agent* under its control. *See Street*, 754 S.W.2d at 154. That language is no longer part of the Rules of Civil Procedure under consideration here. *Compare* Tex.R. Civ. P. 201(3), 43 Tex. B.J. 767, 774 (1981; repealed 1999, 61 Tex. B.J. 1140) *with* Tex.R. Civ. P. 199.3, 205.1. In *Street*, the Texas Supreme Court specifically relied upon an implied finding that Walton was Wal–Mart's agent. *Street*, 754 S.W.2d at 154. Rules 199.3 and 205.1, the Rules of Civil Procedure involved here, do not contain the word "agent;" so to the extent the

4. *See* Tex R. Civ. P. 201, 43 Tex. B.J. 767, 774 (1981, repealed 1999, 61 Tex B.J. 1140).

Supreme Court utilized Walton's status as Wal–Mart's agent there is no such requirement to do so under the current rules.

The Bank also contends that the fact that Huntsman had produced other directors requested through a notice is evidence that directors are subject to Huntsman's control. The Bank further argues that Huntsman's request that directors hold any files relevant to the litigation is evidence of control. We are not persuaded by the Bank's argument, since the directors' cooperation avoided any need for Huntsman to confront the issue. Further, the fact that the directors may have a fiduciary duty to preserve evidence on notice to do so involves different considerations than the issue before us here, which concerns the party's power to compel the witness to attend a deposition.

Finally, the Bank points out that Texas Rule of Civil Procedure 215.2(b) authorizes the trial court to sanction a party for its director's failure to comply with a proper discovery request, and argues that the fact that Rule 215.2 reaches the director necessarily implies that directors are subject to the corporation's control. However, we note that the sanctions are allowed when a party fails to comply with a "proper" discovery request, and we further believe that the trial court's discovery order must likewise be "proper" to justify a sanction. Consequently, we do not agree that Rule 215.2 creates tension in our interpretation of Rules 199.3 and 205.1.

To summarize, the record in this case contains no evidence proving that Huntsman possessed the type of control implicated by the Rules of Civil Procedure concerning its director Reaud. For the above reasons, we find that *Street* is distinguishable and does not control our resolution of the issue before us. In conclusion, we hold that there was no evidence to show that Huntsman controlled Reaud's decision about whether to appear at a deposition that he was not subpoenaed to attend. In the absence of such evidence, the trial court abused its discretion in ordering Reaud's appearance and the deposition, and further abused its discretion in applying the order to him personally. In light of our holding that the deposition, as noticed, is not sufficient to compel Reaud's appearance, we need not reach the separate but substantial issue the parties raise concerning the trial court's decisions on how to address problems involving the attorney-client privilege. Tex.R.App. P. 47.1. (requiring appellate court's opinion to be as brief as practicable but to address every issue raised that is necessary to final disposition).

We are confident that the trial court will vacate its order of March 30, 2009, and grant Reaud's request that he not be required to appear without first being subpoenaed. The writ shall issue only if the trial court does not comply.

PETITION CONDITIONALLY GRANTED.