**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed January 30, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00585-CV

---

## IN RE TOTAL PETROCHEMICALS & REFINING USA, INC., Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-54808**

---

## DISSENTING OPINION

This court should grant relator Total Petrochemicals & Refining USA, Inc.'s petition for writ of mandamus. Because the court instead denies mandamus relief, I respectfully dissent.

### I. BACKGROUND

Relator Total Petrochemicals & Refining USA, Inc. ("Petrochemicals") produces polyethylene at its high-density polyethylene plant in Bayport, Texas. On

New Year's Eve 2016, the Bay II compressor unit at the plant failed, which resulted in the unplanned and complete shutdown of the Bay II unit for ten days. Petrochemicals alleges that guard filters purchased from real party in interest White Tucker Company ("White Tucker") were to blame. The mandamus record showed that guard filters serve as the last line of defense in preventing unwanted "fines"—very small, abnormally shaped particles of high-density polyethylene created as a byproduct of the high-density polyethylene manufacturing process—from entering into and accumulating within the compressor unit, where the fines will melt and cause a system shutdown. This undesired accumulation and melting of equipment is called "fouling." According to Petrochemicals, improperly fabricated guard filters caused severe fouling within the compressor unit. Petrochemicals sued White Tucker, a distributer of the filters and filter elements; Jonell Filtration Products, Inc., a manufacturer of the filters and filter elements; Texas Filtration, Inc., a manufacturer of the filters and filter elements; and Filtration Group, LLC, a holding company that owns Jonell (collectively, the "Defendants").

During the litigation, Petrochemicals produced a root-cause-analysis memorandum and PowerPoint authored by an engineer, Julien Libeert, just days after the shutdown. The Defendants sought to take Libeert's deposition. Petrochemicals's counsel advised the Defendants that because Libeert was not a Petrochemicals employee, the Defendants would need to subpoena Libeert if they wanted to depose him.

The following month, the Defendants filed a joint emergency motion to compel production of discovery and a motion to continue the trial date. The Defendants sought, among other things, to compel Libeert's deposition, contending

2

that that Libeert was an employee of Petrochemicals or, alternatively, that Libeert was otherwise subject to Petrochemicals's control. Petrochemicals responded that Libeert was not its employee or otherwise under its control and that Libeert works for Total Research & Technology Feluy in Belgium ("Feluy"), which is a different entity and not a party to the lawsuit. Petrochemicals had provided this information to the Defendants several months before the Defendants filed their motion compel. The Defendants did not serve Petrochemicals with a notice of deposition for Libeert.

The trial court signed an order, dated June 28, 2019, compelling, among other things, Petrochemicals to present Libeert for deposition within 45 days of the court's order (the "Deposition Order").

## II. MANDAMUS RELIEF WARRANTED

In this mandamus proceeding, Petrochemicals asks this court to compel the trial court to set aside the portion of the Deposition Order compelling Libeert's deposition. To get mandamus relief, Petrochemicals must show that the trial court clearly abused its discretion, and that Petrochemicals lacks an adequate remedy by appeal.[1] Petrochemicals showed both.

### A. Governing Rules of Civil Procedure

Both Petrochemicals and the Defendants rely on the Ninth Court of Appeals's opinion in *In re Reaud*.[2] The *Reaud* court examined the interplay between two Rules of Civil Procedure to determine when a subpoena is required to compel the

---

[1] *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (original proceeding) (per curiam).

[2] *See* 286 S.W.3d 574 (Tex. App.—Beaumont 2009, orig. proceeding).

3

attendance of a non-party witness. Rule 199.3, entitled "Compelling Witness to Attend," provides:

> A party may compel the witness to attend the oral deposition by serving the witness with a subpoena under Rule 176. If the witness is a party or is retained by, employed by, or otherwise subject to the control of a party, however, service of the notice of oral deposition upon the party's attorney has the same effect as a subpoena served on the witness.[3]

Rule 205.1, entitled "Forms of Discovery; Subpoena Requirement," provides in relevant part:

> A party may compel discovery from a nonparty--that is, a person who is not a party or subject to a party's control--only by obtaining a court order under Rules 196.7, 202, or 204, or by serving a subpoena compelling:

> (a) an oral deposition[.][4]

The *Reaud* court observed that Rules 199.3 and 205.1 encompass the following three categories of nonparties who may be required to attend depositions without being subpoenaed: (1) employees; (2) retained experts; and (3) witnesses who are "otherwise subject to the control of a party[.]"[5] For these categories, serving the party's attorney with a notice of deposition suffices to compel the nonparty witness to appear for deposition.[6]

---

[3] Tex. R. Civ. P. 199.3.

[4] Tex. R. Civ. P. 205.1(a).

[5] *Id.* at 579–80 (quoting Tex. R. Civ. P. 199.3).

[6] Tex. R. Civ. P. 199.3.

4

As for nonparty employees, the *Reaud* court assumed the rule requires the employee-nonparty-witness to appear because the employee-non-party witness's employer has the ability to establish the terms of employment, to fire the employee, to control the employee's pay, and to decide whether the employee receives a future promotion or demotion.[7] As to retained experts, the *Reaud* court reasoned that they, too, can be "controlled" by the attorney for the party who, along with the client, has the power to terminate the relationship in the event the expert failed to comply with the attorney's instruction to appear for deposition.[8]

Nonparty witnesses who "otherwise [are] subject to the control of a party" also may be compelled to appear for deposition with service of the notice on the party's attorney.[9] The *Reaud* court observed that the rules do not define the term "otherwise controlled."[10] The court looked to the doctrine of *ejusdem generis* and found that it applies "to restrict the potentially broad meaning of 'otherwise controlled' as used in Rules 199.3 and 205.1."[11] The doctrine holds that "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation."[12] The court reasoned that *ejusdem generis* limits the undefined, general term "otherwise controlled" as used in 199.3 and 205.1

---

[7] *Reaud*, 286 S.W.3d at 579.

[8] *Id.* at 580.

[9] *Id.* (quoting Tex. R. Civ. P. 199.3).

[10] *Id.*

[11] *Id.*

[12] *Id.* (internal quotation marks and citations omitted).

5

to include "only control of the same kind, class, or nature as the types of control parties would have over employees or retained experts."[13] So, the *Reaud* court concluded that, while the current rules contain text that allow them to reach beyond retained experts and employees, these two rules do not extend to nonparties over whom the party lacks the type of control it has over an employee or a retained expert.[14]

The Defendants contend that Libeert is a direct employee of Petrochemicals. Brad Klussmann, the plant manager, testified at deposition that Libeert is "a process expert for Total that's part of the polymers technology group in — that's in Belgium." Klussmann further testified that Libeert is "across different operating facilities within Total." Chad Gerard, the production superintendent, testified that Libeert is "a process technology expert from Total in Europe." Gerard further stated that Libeert "does not normally work at the Bayport Plant. He's based out of Europe and travels to our site on occasion to help with investigations."

None of the deposition testimony the Defendants cite shows that Petrochemicals had the requisite control over Libeert. Nothing in the mandamus record shows that Petrochemicals could establish the terms of Libeert's employment, fire him, control his pay, or decide whether he would receive a future promotion or demotion, necessary to establish that Libeert is an employee of Petrochemicals.[15] At best, the Defendants have shown that another Total-related entity employed Libeert.

---

[13] *Id.*

[14] *Id.*

[15] *See id.* at 579.

6

Petrochemicals maintains that Libeert works for Feluy in Belgium. The Defendants contend, even if Libeert is not a direct employee of Petrochemicals, he is subject to Petrochemicals's control because he "works for one or more entities with Total, S.A., [Petrochemicals's] parent company." The Defendants claim that Libeert has been required to complete a project for Total's United States locations, including the main investigation in this case. Klussmann testified that Libeert "was brought . . . in for his expertise in the . . . polyethylene manufacturing process." Libeert also gave Klussmann "a report as background information to some slides."

The Defendants further state that Libeert (1) has a "Total" email address, which is the same email address used by all other Petrochemicals employees; (2) uses Total's internal messaging system; and (3) and has a LinkedIn page showing that he has been a process engineer at "Total" for several years. The Defendants argue that "[Petrochemicals] exercises a sufficient amount of control over Libeert to satisfy the control element of Rule 199.3, particularly because it is undisputed that Libeert is an employee of an entity owned by [Petrochemicals's] parent company, Total." The evidence on which the Defendants rely does not reflect that Petrochemicals has any control over Libeert as if he were a Petrochemicals employee or that Libeert is otherwise subject to Petrochemicals's control.[16] Nothing in the mandamus record shows Libeert would fall within the reach of deposition without subpoena.

---

[16] *See id.* at 578–80.

The majority concludes that the determination of whether Petrochemicals has control over Libeert presents a fact issue.[17] But, the majority points to no evidence of the type of control necessary to obtain Libeert's deposition without subpoena. Though appellate courts do not grant mandamus relief if the evidence raises genuine issues of material fact,[18] there are none in this case.

Under an abuse-of-discretion standard, we are to defer to the trial court's factual determinations if they are supported by the evidence, but we review de novo the trial court's legal determinations.[19] If the evidence supports the trial court's factual determinations, we are not to disturb them in a mandamus proceeding.[20] The relator must show the trial court reasonably could have reached only one decision and not the decision the trial court made.[21]

The evidence in the mandamus record does not support the trial court's implied finding that Petrochemicals has sufficient control over Libeert under Rule 199.3 that to depose him, the Defendants need not get a subpoena but instead may

---

[17] *Ante*, at 4.

[18] *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

[19] *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

[20] *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d 688, 690 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding).

[21] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992 (orig. proceeding); *see also In re RSR Corp.*, 568 S.W.3d 663, 665 (Tex. 2019) (orig. proceeding) (per curiam) ("An appellate court cannot substitute its judgment for that of the trial court and may not set aside the trial court's findings as arbitrary and unreasonable unless the trial court could have reached only on decision.").

8

serve Petrochemicals's counsel with a notice of Libeert's deposition.[22]   In the absence of evidence that Petrochemicals is not Libeert's employer with the ability to establish the terms of Libeert's employment, to fire him, to control his pay, and decide on a future promotion or demotion or that Libeert otherwise is subject to Petrochemicals's control, the Defendants must serve a subpoena on Libeert if they want to depose him.[23]

A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.[24]  Because Petrochemicals has shown that the only decision the trial court reasonably could have reached is that Libeert's deposition could not be compelled without a subpoena, this court should conclude that the trial court abused its discretion by granting the Defendants' motion to compel Libeert's deposition without the Defendants' having served Libeert with a subpoena.

## B.    Lack of Adequate Remedy

Courts determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments.[25]  Because this balance depends heavily on circumstances, courts look to principles for guidance rather than rely on

---

[22] *See Labatt Food Serv., L.P.*, 279 S.W.3d at 643; *La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d at 690.

[23] *See* Tex. R. Civ. P. 199.3, 205.1.

[24] *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

[25] *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

simple rules that treat cases as categories.[26] In evaluating benefits and detriments, the court is to consider (1) whether mandamus will preserve important substantive and procedural rights from impairment or loss,[27] (2) whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments,"[28] and (3) whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." [29] Appeal is not an adequate remedy when the appellate court would not be able to cure the trial court's discovery error on appeal.[30]

In determining whether a party has an adequate remedy by appeal, appellate courts consider whether mandamus will preserve important substantive and procedural rights from impairment or loss.[31] Petrochemicals will have lost its right to have the Defendants comply with the rules of discovery if the Defendants are allowed to compel Libeert's deposition without first serving a subpoena on him. Because this error cannot be cured on appeal,[32] Petrochemicals lacks an adequate remedy by appeal.

---

[26] *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding).

[27] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

[28] *Id.*

[29] *Id.*

[30] *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam); *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding).

[31] *Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

[32] *Dana Corp.*, 138 S.W.3d at 301; *Ford Motor Co.*, 988 S.W.2d at 721.

## III. CONCLUSION

No fact issues preclude granting mandamus relief. The record evidence shows Libeert is not an employee of Petrochemicals nor under Petrochemicals's control. So, the Defendants may obtain Libeert's deposition only through a properly served subpoena. The trial court abused its discretion by compelling Libeert's deposition without requiring that the Defendants serve a subpoena on him. Because Petrochemicals lacks an adequate remedy by appeal, this court should grant Petrochemicals's petition for writ of mandamus and direct the trial court to set aside the portion of the Deposition Order that compels Libeert's deposition.

/s/ Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant (Spain, J., majority)

11