FILED

06/11/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0729

DA 22-0729

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 123

JAMIE NORRIS,

     Plaintiff and Appellant,

  v.

RICK L. OLSEN d/b/a A&O SHEET METAL,

     Defendant, Appellee,
     and Cross-Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
                In and For the County of Beaverhead, Cause No. DV-1-2021-0014420
                Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Lawrence E. Henke, David L. Vicevich, Vicevich Law, Butte,
Montana

     For Appellee:

          Paul N. Tranel, Jesse Beaudette, Bohyer, Erickson, Beaudette &
Tranel, PC, Missoula, Montana

                    Submitted on Briefs:  October 25, 2023

                            Decided:  June 11, 2024

Filed:

                         _____
                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Plaintiff Jamie Norris appeals the November 22, 2022 Order on Outstanding Motions ("Order") issued by the Fifth Judicial District Court, Beaverhead County. The Order granted summary judgment in favor of defendants Rick L. Olsen and A&O Sheet Metal & Plumbing (collectively "A&O"). A&O cross-appeals the portion of the Order denying his motion to exclude Norris's expert witnesses. We restate the parties' issues and address:

> *Issue 1: Whether the District Court erred by holding that, as a matter of law, Norris could not establish that A&O was the cause-in-fact of the fire.*
> *Issue 2: Whether the District Court erred by denying A&O's motion to exclude Norris's expert witnesses.*

¶2     We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     On October 26, 2020, a fire caused significant damage to Norris's mobile home. On that morning, Norris called A&O, a business owned and operated by Olsen, regarding a malfunctioning water heater and furnace in his mobile home. A&O sent two employees: Austin Hoerning, an apprentice plumber, and Luke Huffaker, a laborer who resided at Norris's home and had been employed by A&O for less than a week. The two A&O employees arrived around 8:30 a.m. and disassembled Norris's furnace. The lack of heat was determined to be the result of a frozen gas meter belonging to Northwestern Energy. After Northwestern Energy restored the flow of gas to the home, Hoerning returned and

2

successfully re-lit the furnace's pilot light just before noon. Less than an hour later, Norris's home was in flames.

¶4 Norris filed suit against A&O on August 2, 2021. The Complaint alleged two counts: (1) a claim under the Montana Consumer Protection Act ("MCPA"), and (2) a claim of negligence. In support of his MCPA claim, Norris alleged that A&O acted deceptively in its advertising and representations to Norris by representing:

a. A&O was capable of performing HVAC repairs in a good and workmanlike manner;

b. an experienced HVAC professional would perform the work for A&O;

c. industry standards of practice would be followed by A&O;

d. A&O/Olsen would ensure the furnace functioned properly prior to leaving the home;

e. A&O/Olsen would follow standard leak checks after reassembly of the furnace unit prior to leaving the home;

f. A&O/Olsen would follow standard relighting procedures prior to leaving the home; and

g. A&O/Olsen would ensure the safety and security of the furnace prior to leaving the home.

¶5 Norris sought actual damages for the destruction of his home and personal property, treble damages pursuant to § 30-14-133(1), MCA, and attorney's fees.

¶6 Norris's negligence claim was premised on the theory that A&O breached its duty to perform its repair work in a good and workmanlike manner, and that A&O's "negligence in performing work below industry standards is a direct and proximate cause" of the fire. Norris claimed A&O's duty included:

3

> following standard industry practice of observing a complete operational test cycle to ensure proper function of the gas furnace, gas valve/regulator, and control to confirm that the fan blower would function properly and shut off the furnace with a system malfunction[] after lighting the furnace pilot light and before leaving [Norris's] home.

Norris alleged A&O breached that duty by "lighting the furnace pilot light and leaving [Norris's] home without ensuring the furnace was fully operational and that safety features to protect against combustion were working properly, resulting in the complete destruction of the home and property contained therein."

¶7 Norris retained Engineering Specialists Incorporated ("ESI") to investigate and provide expert testimony on the cause and origin of the fire. Norris disclosed as expert witnesses three ESI employees: S. Anthony Siahpush, Ron Scott, and Nathan Siahpush. Norris later identified S. Anthony Siahpush as the expert to be deposed and the expert who would testify at trial. Siahpush lives in Omaha, Nebraska, and the parties agreed that he would be deposed by Zoom on April 6, 2022. Norris was served a notice of deposition on February 28, 2022. By late March, it became apparent Siahpush would not appear for his deposition via Zoom due to his reservations toward the perceived "lack of security for Zoom." A&O accordingly requested Siahpush's location so he could be served with a subpoena, which neither Siahpush nor counsel for Norris responded to. A&O then obtained a deposition subpoena from Douglas County District Court in Nebraska. A&O was unable to serve Siahpush with the subpoena in either Nebraska or California, where Siahpush claimed to be located. Siahpush eventually stated he was unable to attend the April 6 deposition in any manner.

4

¶8 A&O moved for an emergency discovery conference, which the District Court held on March 31, 2022. The District Court issued an order the following day, requiring Siahpush to attend his deposition on April 6, 2022, "as set forth in the February 28, 2022 Notice of Deposition." The District Court's Order stated in relevant part that "the deposition shall be conducted under the authority of [Nebraska Rules of Discovery] § 6-330(A) Interstate Depositions and Discovery;" "the deposition shall be conducted in accordance with Neb. R. Disc. § 6-330 Depositions Upon Oral Examination;" "counsel are permitted to use video conference technology, such as ZOOM, to appear and converse with the witness during the deposition (without any recording);" and "[t]hat S. Anthony Siahpush shall provide testimony in accord with Neb. Rev. St. § 25-1223 Trial Subpoena; deposition subpoena; statement required; by whom served; forms, subject to any privilege objections that may be made[.]" Despite the District Court's Deposition Order, Siahpush failed to appear for the deposition on April 6, 2022.

¶9 A&O moved to exclude Norris's expert witnesses on April 29, 2022. In its motion, A&O sought exclusion on the grounds that Siahpush "fail[ed] to obey [the Deposition Order] and for [Siahpush's] refusal to submit to a remote deposition."

¶10 A&O filed a motion for summary judgment on May 2, 2022 "on all claims alleged in Plaintiff's Complaint." This motion was based primarily on the theory that Norris's claims would fail as a matter of law because expert testimony is required to establish: (1) that A&O's conduct caused the fire, and Norris would be unable to prove this element if the court granted A&O's motion to exclude; and (2) Norris's retained expert was not

5

qualified to testify as to the duty A&O owed to Norris in servicing the furnace. A&O also argued summary judgment was proper because, even if the District Court did not exclude Norris's experts, the ESI report "fail[ed] to provide a causal link between A&O's actions or inactions and the cause of the fire[.]"

¶11 After a November 15, 2022 hearing on both motions, the District Court issued the Order now on appeal. The District Court denied A&O's motion to exclude, reasoning:

> The [Deposition Order] submitted and agreed upon by counsel provided Nebraska law was the controlling authority for the deposition, and Nebraska law requires service of a subpoena to command attendance at a deposition . . . because the parties agreed to the terms of the [Deposition Order] which required service, and the fact service was never completed on Siahpush, excluding Norris's retained experts would be an inequitably harsh sanction, and A&O's motion to exclude is denied.

¶12 Despite denying A&O's motion to exclude Norris's experts, the District Court concluded summary judgment in favor of A&O on the element of causation was proper because "Norris cannot prove causation, as the reasoning is speculative, and the ESI Report does not sufficiently establish the fire was caused by any of A&O's actions or inactions." The District Court explained that:

> The only statement in the ESI Report seemingly establishing causation is that A&O did not run and complete an operational test cycle. However, the Court agrees with A&O that nothing in the ESI Report specifically factually links how failing to run an operational test cycle would cause high levels of heat to the wood framing above the fan which is where the ESI Experts concluded the fire started. There is no evidence [that] had A&O run an operational test cycle the fire would have been prevented, or that the fire would not have started but for A&O's failure to run the test cycle.

The District Court further reasoned that "causation by chronology alone is mere speculation."

6

## STANDARDS OF REVIEW

¶13    We review a grant of summary judgment de novo, applying the same analysis as the trial court under M. R. Civ. P. Rule 56. *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, ¶ 17, 410 Mont. 239, 518 P.3d 840 (citation omitted).

¶14    Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). All reasonable inferences are drawn in favor of the party opposing the motion. *Kostelecky*, ¶ 18 (citation omitted).

¶15    A district court's conclusions of law, including its interpretation of a statute, are reviewed de novo for correctness. *Mont. Indep. Living Project v. City of Helena*, 2021 MT 14, ¶ 7, 403 Mont. 81, 479 P.3d 961 (citation omitted). A district court's ruling on a motion *in limine*, to the extent that ruling involves an exercise of discretion and is not "based purely on an interpretation of the evidentiary rules," will not be overturned absent an abuse of discretion. *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 14, 380 Mont. 204, 354 P.3d 604 (citation omitted). A district court's findings of fact are reviewed for clear error. *Mont. State Univ.-Bozeman v. Mont. First Jud. Dist. Ct.*, 2018 MT 220, ¶ 20, 392 Mont. 458, 426 P.3d 541 (hereinafter "*MSU*").

## DISCUSSION

¶16    As a threshold matter, the parties dispute which elements are required for a plaintiff to sustain a claim under the MCPA. Norris claims he need only establish that:

(a) Norris was a consumer of A&O's services as defined by § 30-14-102(1), MCA;

(b) A&O is a entity providing goods and services in trade and commerce in Montana as defined by §§ 30-14-102(6) and (8); and

(c) A&O's actions and course of conduct involve acts and misrepresentations that violate the MCPA as defined by § 30-14-103, MCA.

A&O asserts that causation of the claimed damages is also a necessary element to Norris's MCPA claim.

¶17   In *Kostelecky*, we announced the essential elements of a private MCPA claim for damages. *Kostelecky*, ¶ 45. Norris's MCPA claim requires proof that, in addition to the three elements identified above, the "unfair or deceptive acts or practices" allegedly employed by A&O caused Norris to "suffer[] any ascertainable loss of money or property, real or personal . . . ." Section 30-14-133(1)(a), MCA; *Kostelecky*, ¶ 45 (citations omitted). Proof that A&O's acts or omissions were the cause-in-fact of the blaze that destroyed Norris's home is necessary for Norris to prevail on both claims.

¶18   *Issue 1: Whether the District Court erred by holding that, as a matter of law, Norris could not establish that A&O was the cause-in-fact of the fire.*

¶19   Noting the minimal briefing or argument on the issue, Norris asserts summary judgment on his MCPA claim was improper because A&O failed to provide the requisite support for its summary judgment motion, and thus "could not possibly have satisfied its burden to establish there are no genuine issues of material fact." Norris argues that summary judgment on the causation element of his negligence claim was improper because the evidence in the record—specifically the expert report and deposition testimony of Olsen and Hoerning—established "at a minimum a question of fact requiring a jury."

8

¶20    A&O responds that summary judgment was proper because causation is an essential element of both claims and nothing in the record establishes that "an action or inaction on A&O's part was the cause-in-fact of the fire."

¶21    A party advancing a claim of negligence must prove: (1) the existence of a duty; (2) a breach of that duty; (3) causation; and (4) damages. *Abraham v. Nelson*, 2002 MT 94, ¶ 11, 309 Mont. 366, 46 P.3d 628. Failure to prove any single element of a negligence claim is fatal to the entire claim. *Abraham*, ¶ 11 (citation omitted). "[I]n those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged." *Abraham*, ¶ 11 (quoting *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 371, 916 P.2d 122, 129 (1996)). Unless the record reveals a lack of factual issues from which "reasonable minds could reach but one conclusion as to the cause of an accident," questions of causation should not be adjudicated as a matter of law. *Dillard v. John Doe*, 251 Mont. 379, 382, 824 P.2d 1016, 1017 (1992).

¶22    A&O cites *Abraham* as instructive on the issue of causation presently before us. In *Abraham*, we affirmed a grant of summary judgment based primarily on the plaintiff's testimony that she did not know the cause of the flooding that damaged her home. *Abraham*, ¶ 24. The *Abraham* plaintiff unsuccessfully sought to rebut the defendant's initial showing of a lack of factual issues by arguing that her evidence was "sufficient for a fact-finder to infer cause-in-fact." *Abraham*, ¶ 25. We rejected the plaintiff's argument that it was "the lack of evidence regarding the element of causation that create[d] the material question of fact, making summary judgment inappropriate." *Abraham*, ¶ 26.

9

¶23 A&O's reliance on *Abraham* is misplaced. While Norris's expert report is not unequivocal proof of causation, it certainly provides more support than the plaintiff's unqualified concession of failure to identify causation in *Abraham*. More illustrative of this point are the two cases relied upon by this Court in *Abraham*. *Abraham* relies on *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, 290 Mont. 126, 962 P.2d 1205. *Gentry* involved a wrongful death and survival action by a personal representative after the decedent was struck in the head by a bullet when a third party, Brent Bacon, stumbled walking up stairs and accidentally discharged his firearm. *Gentry*, ¶ 8. The accident occurred on property owned by the ranch and leased to a cattle company. Gentry sued the ranch, the cattle company, and the shooter. Gentry's claims against the ranch and cattle company contended they negligently failed to properly maintain the premises. We affirmed the district court's grant of summary judgment in favor of the corporate defendants based on Bacon's repeated testimony that he could not attribute his fall to the condition of the stair, any clutter near it, or simply his own clumsiness. *Gentry*, ¶¶ 26-29.

¶24 *Abraham* also relied on our decision in *Krone v. McCann*, 196 Mont. 260, 638 P.2d 397 (1982) (overruled on other grounds by *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 322, 950 P.2d 748, 756 (1997)). In *Krone*, we affirmed a grant of summary judgment in favor of a defendant because the plaintiff, who was injured while walking on the defendant's property, "[did] not know if it was merely a mound of dirt or an old corral pole [that caused her to trip]." *Krone*, 196 Mont. at 266, 638 P.2d at 400. We quoted with approval the language from *Krone* stating "[i]n an action for negligence, a plaintiff must

10

produce evidence from which it can be reasonably inferred that negligent conduct on the part of the defendant or its agents was the [cause-in-fact] of the plaintiff's injuries." *Abraham*, ¶ 23 (quoting *Krone*, 196 Mont. at 266, 638 P.2d at 400).

¶25    *Abraham*, *Gentry*, and *Krone* stand for the proposition that a defendant "cannot be held liable simply because damage did indeed occur" to the plaintiff or their property. *Abraham*, ¶ 27.  But the claims here do not fall neatly into that that category, particularly for purposes of summary judgment, in which we view the facts in the light most favorable to Norris.  In opposition to A&O's motion for summary judgment, Norris submitted his expert's report that opined the failure of A&O to "stay after reignition of the pilot light to ensure the blower fan was operational and the thermostat would shut off maximum gas flow once temperature was reached, resulted in high levels of heat to the wood framing and blower motor which was froze up as seen in the inspection."  The report stated that A&O's "failure to follow the standard of practice to confirm operation of the furnace and gas line, a life and safety matter, was the cause of this fire which started less than an hour after [A&O's employees] left."  The Report stated the cause of the fire was A&O's "disregard, negligence, and failure of the experienced plumper [sic] with [A&O] to confirm a complete operational test cycle to ensure proper function of the gas furnace, gas valve/regulator, and control to confirm that the fan blower would function properly and shut off the furnace with a system malfunction."  The report identified the location within the furnace where the fire originated, and the cause of that fire—high levels of heat to the wood framing above the fan.  Deposition testimony of Hoerning indicated that the issue leading to the service

11

call was a frozen gas line, rather than a malfunctioning furnace. Hoerning testified that upon receiving word from Northwestern Energy that the gas service was restored, he returned to the home to restart the furnace, which "fired right up." Hoerning testified that he did not replace the glass covering to the pilot light, meaning the flame was exposed to the outside ambient air. Hoerning conceded that without the glass cover, the furnace would draw air in through that opening, providing additional oxygen to the flame. Given that the origin of the fire was just above the pilot light chamber, less than an hour after A&O serviced it, a reasonable mind could certainly find that A&O's actions were responsible for the fire.

¶26 The District Court erred by granting summary judgment to A&O.

¶27 *Issue 2: Whether the District Court erred in denying A&O's motion to exclude Norris's expert witnesses.*

¶28 A&O argues that the District Court's interpretation of Nebraska law as requiring a subpoena to compel Siahpush's attendance at the deposition was incorrect. A&O argues that the District Court abused its discretion in denying its motion to exclude Norris's expert witnesses as "an inequitably harsh sanction" because A&O did not accomplish service on Siahpush. Norris responds that the District Court's ruling was proper because, by failing to serve Siahpush, the noncompliant party was actually A&O.

¶29 The District Court premised its denial of A&O's motion to exclude primarily on the fact that, despite the extensive efforts of A&O, Siahpush was never served with a deposition subpoena. Citing Neb. Ct. R. Disc. § 6-330(A)(b) and (c), the District Court reasoned that the Deposition Order "submitted and agreed upon by counsel provided

12

Nebraska law was the controlling authority for the deposition, and Nebraska law requires service of a subpoena *to command* attendance at a deposition." (Emphasis added.)

¶30 The fundamental infirmity of A&O's argument in support of its cross-appeal is revealed by A&O's choice of language to emphasize. A&O focuses on the fact that Neb. Ct. R. Disc. § 6-330(A) "does not require a subpoena but sets forth the process for having a subpoena issued and served *if* one is requested." (Emphasis in original.) A&O emphasizes the language of Neb. Ct. R. Disc. § 6-330(a), which provides that "attendance of witnesses *may be* compelled by subpoena." (Emphasis in original.) A&O explains that "[t]he Nebraska rules cited in the [Deposition Order] discuss *when* a subpoena may be issued; however, none of the rules *require* a subpoena be issued and served in order to conduct the deposition." (Emphasis in original.)

¶31 The District Court interpreted Nebraska law as "requir[ing] service of a subpoena *to command* [Siahpush's] attendance at [the] deposition." (Emphasis added.) This interpretation is supported by the plain language of Neb. Ct. R. Disc. § 6-330(A)(5), which defines a subpoena as "a document, however denominated, issued under authority of a court of record that *requires* a person to: (A) testify at a deposition[.]" (Emphasis added.) Neb. Rev. Stat. § 25-1223, cited in paragraph seven of the Deposition Order, provides in relevant part that "a subpoena may be issued *to command* a person to testify at a trial or deposition." (Emphasis added.) Neb. Ct. R. Disc. § 6-330(g) provides that when a noticing party fails to "serve a subpoena on a nonparty deponent, who consequently did not attend [the deposition]" the opposing party, "who, expecting a deposition to be taken, attends in

13

person or by an attorney may recover reasonable expenses for attending, including attorneys fees. . . .

¶32 A&O cites authority from other jurisdictions for the proposition that a subpoena is not required to depose an opposing party's expert, and to demonstrate that courts "routinely exclude expert witness testimony as a permissible sanction when there is a failure to comply with discovery orders." *See, e.g.,* Tex. R. Civ. P. 199.3 ("If the witness is a party or is retained by, employed by, or otherwise subject to the control of a party, service of the notice of oral deposition upon the party's attorney has the same effect as a subpoena served on the witness."); *In re Reaud*, 286 S.W.3d 574, 580 (Tex. Ct. App. 2009) ("Retained experts are also subject to being 'controlled' by the attorney for the party who, along with his client, has the power to terminate the relationship in the event the expert failed to comply with the attorney's instructions to appear for a deposition.").

¶33 The problem with A&O's interpretation is that the requirements of Nebraska law—which the District Court explicitly incorporated into its order—provide that a subpoena is the legal mechanism for commanding, compelling, or requiring the attendance of a nonparty witness at a deposition. In the context of that interpretation, we turn to whether the District Court abused its discretion by denying A&O's motion to exclude.

¶34 M. R. Civ. P. 37(b) vests trial courts with broad discretion to impose discovery sanctions. *MSU*, ¶ 15. The deferential standard of review we observe in reviewing a trial court's decision on whether to impose sanctions on a party reflects our recognition that the trial court "is in the best position to determine both whether the party in question has

14

disregarded the opponent's rights, and which sanctions are most appropriate." *Richardson v. State*, 2006 MT 43, ¶ 21, 331 Mont. 231, 130 P.3d 634 (citation omitted).

¶35 The District Court concluded that "because the parties agreed to the terms of the Court's Order which required service, and the fact service was never completed on Siahpush, excluding Norris's retained experts would be an inequitably harsh sanction[.]" The District Court accordingly denied A&O's motion to exclude. Rule 37 allows a court to impose sanctions when "a party. . . fails to obey an order to provide or permit discovery[.]" M. R. Civ. P. 37(b)(2). The District Court's order falls within its broad discretion to determine an appropriate sanction.[1]

## CONCLUSION

¶36 Viewing the summary judgment record in a light most favorable to Norris, genuine issues of material fact exist regarding whether A&O was the cause-in-fact of the fire that destroyed Norris's home. The District Court erred by granting summary judgment in favor of A&O.

¶37 Regarding A&O's motion to exclude Norris's experts, the District Court's determination that exclusion of Norris's retained experts would be an inequitably harsh sanction "because the parties agreed to the terms of the Court's Order which required

---

[1] As Justice Rice correctly notes in his concurrence, nothing in this Opinion should be misconstrued to indicate that Norris's expert can be excused from being deposed. A&O obviously has the right to depose Norris's expert, and Norris has an obligation to cooperate in good faith in making his expert available. We affirm the District Court's determination regarding the appropriate sanction in this instance because it is "better positioned than we are to evaluate the conduct and good faith of parties during discovery, and as such they enjoy considerable leeway in sanctioning discovery abuses." *Peterman v. Herbalife Int'l, Inc.*, 2010 MT 142, ¶ 23, 356 Mont. 542, 234 P.3d 898.

service, and . . . service was never completed" on Norris's retained expert was not an abuse of discretion.

¶38 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice James Rice, concurring.

¶39 I concur with the Court's decision, including affirming on Issue 2 based upon the language of Nebraska Rules and the exercise of the District Court's discretion. However, this does not mean that Plaintiff's expert can be excused from being deposed; he needs to be made available. Defendant made substantial effort to depose Mr. Siahpush, as the District Court acknowledged, but has received only resistance. Plaintiff's counsel needs to engage to assist in this process, or perhaps obtain a different expert who is not Zoom-adverse and who is willing to cooperate in the litigation. Otherwise, the harsh sanction of excluding Plaintiff's expert at trial may well become appropriate.

/S/ JIM RICE